CASE No. 1155.

YATES v. GRIDLEY.

1. In action for partition, the clerk of court issued an order for the publication of a summons to the non-resident co-tenants (but made no direction for service through the mail) upon plaintiff's affidavit "that defendants are not residents of this, but are residents of the State of New York, and that their post-office is unknown to deponent and cannot be ascertained, notwithstanding due diligence has been employed, nor can they be found in this State after due search for them." Defendants had no notice of the action until after sale. *Held*, on motion afterwards made by defendants to vacate the judgment, that the order of the clerk was valid, and that it was not necessary that the affidavit should state that the sheriff had made search, or show the facts upon which the statements of the affiant were based, if the clerk was satisfied by the allegations of the affidavit. This case distinguished from *Smith & Melton* v. *Walker*, 6 *S. C.* 174, which arose under the attachment act.

2. *Hill* v. *Watson*, 10 *S. C.* 275, approved, and the act of 1869 for vacating erroneous judgments construed, and limited, in equity causes, to cases in which there is error of law apparent on the face of the record, or where evidence has been newly discovered.

3. Where only two commissioners in partition acted, the third not having been notified, and the return was confirmed by the Circuit judge with knowledge of these facts, *Held*, that the return was sufficient, and that the judgment of confirmation could not afterwards be set aside by another Circuit judge because only two commissioners had acted.

4. A commissioner in partition, who is thoroughly acquainted with the land to be partitioned, may act without again going upon the land, and, after consultation with the other commissioners, agree upon a return that a division is impracticable.

5. A defendant made a party by publication to an action for partition, cannot, under Section 158 of the code, be admitted on motion after sale, to have the judgment vacated. If he desires to raise the question of good faith he must do so under a proceeding more formal than a motion, and by proof more reliable and better sifted than affidavits.

6. Land was sold by the clerk in December, under an order of sale which required cash sufficient to pay costs, the balance on a secured credit, and if terms of sale were not complied with, the land to be immediately advertised for resale on the next sales-day at the risk of the former purchaser. The purchaser did not comply with her bid until January 15th, when the clerk executed the title-deed, the property not having been resold. *Held*, that the delay of the purchaser to comply furnished no ground for vacating the sale and canceling the deed.

Before Kershaw, J., Aiken, September, 1881.

This case is stated fully in the opinion. The order for publication should be added, which was follows: " After reading and filing the affidavit of Kate C. Yates, the above plaintiff, of the non-residence of Edward Gridley and Elisha Risley the above defendants, *it is ordered,* that said defendants *be served by publication* in the 'Aiken Journal and Review' once a week for the period of six weeks."

Copy-summonses were, however, mailed addressed to the defendants at New York city, but they did not reside there and never received them. They first heard of the action about the end of January, 1881.

*Messrs. James Aldrich* and *John C. Haskell,* for appellants.

*Messrs. Henderson Bros.,* contra.

March 7th, 1882. The opinion of the court was delivered by

Simpson, C. J. The appellant instituted an action for a partition of a tract of land located in Aiken county, of which she and respondents were co-tenants. The respondents being non-residents were made parties by publication. The writ in partition was directed to three commissioners, two of whom alone acted. These two made return and recommended a sale, and Judge Thomson, by a decretal order dated November 11th, 1880, ordered a sale by the clerk, the terms being, cash sufficient to pay all costs and disbursements of the action, and the balance on a credit of one year, &c., with the condition, " that upon failure of the purchaser to comply " the clerk shall immediately thereupon advertise the premises for sale on the next sales-day at the risk of the former purchaser.

At the sale under this order the appellant became the purchaser, but she did not comply until after the next sales-day, but then complying she received a conveyance from the clerk. On March 5th, 1881, Judge Wallace, upon certain affidavits and certificates submitted to him, stayed all further proceedings under

the decretal order of Judge Thomson and directed the appellant to show cause before him why the alleged service of summons on respondents should not be set aside, also the judgment rendered by Judge Thomson, and all proceedings under said summons and judgment. Also, why the deed from the clerk should not be disaffirmed and set aside as irregular and fraudulent.

The return to this rule was ultimately heard by Judge Kershaw, who, on September 24th, 1881, pronounced his decree vacating the judgment and all proceedings thereunder and all orders before judgment, on the following grounds: 1. Because the service of summons was incomplete, the affidavit upon which it was made being held by him insufficient. 2. Because only two of the commissioners of the three named in the writ acted, the third never having been called upon to join in the performance of the duty imposed, and also because it appeared that the two who signed the return, never went upon the land, or held any conference with each other, but separately signed the return recommending a sale. He further held, that the appellant not having complied with the sale on the day of sale, although she complied afterwards, the clerk was not authorized to execute a deed to her.

The appeal seeks to reverse this decree and the questions involved are: 1. Was the summons sufficient? 2. Was the return by the commissioners to the writ in partition so defective as to vitiate it? 3. Was the deed by the clerk "*ultra vires*"?

As to the first point. It seems that the publication of the summons was ordered upon the affidavit of the appellant. The Circuit judge held this affidavit insufficient, upon the ground that it failed to show the jurisdictional facts, in that it did not appear "that the summons had ever been lodged with the sheriff, nor that any effort had been made to ascertain the post-office of the defendants, nor that any search was in fact made in the State, except from the statements of the affidavit, but upon that alone the clerk acted in granting the order, as will appear from the recitals of the order."

The affidavit was as follows: "Personally appeared before me Kate C. Yates, who, being sworn, says that Edward Gridley and Elisha Risley, the above defendants, are non-residents of

this, but are residents of the State of New York, and that their post-office is unknown to deponent, and cannot be ascertained, notwithstanding due diligence has been employed, nor can they be found in this State after due search for them. That said defendants have property in this State, as deponent is informed and believes, as described in the complaint in this cause for a partition of the same."

This affidavit was held insufficient for the reasons given above, the judge stating that the officer making the order of publication was not warranted in accepting the statements contained in the affidavit, as to the post-office of respondents and the fact that they could not be found in the State, as conclusive; but that he should have required the facts upon which these statements were based, so that he could have decided for himself whether the conclusions of the affiant were reasonably true.

Section 158 of the code provides that where a party is a non-resident, but has property in the State, and the court has jurisdiction of the subject-matter of the action, he may be made a party by publication, where it is made to appear by affidavit, to the satisfaction of the officer ordering such publication, that defendant cannot after due diligence be found within the State, and that a cause of action exists against him * * * a copy of the summons to be forthwith deposited in the post-office directed to the person, to be served at his residence, unless it appears that such residence is neither known to the party making the application nor can with reasonable diligence be ascertained by him.

All that this section requires is, that it be made to appear by affidavit to the satisfaction of the officer who directs the publication, that the defendant has property in the State, that he cannot be found therein after due diligence, and that a cause of action exists against him. And if the post-office is known, or can with reasonable diligence be ascertained, the order must direct also that the party be served at his residence through the post-office.

In this case the clerk of the court who ordered the publication, we must suppose, was satisfied with the affidavit submitted to him. His duty was somewhat of a judicial character, which he could perform upon being satisfied by affidavit that the conditions demanding the publication were present. The act does not

specify the character of the facts and circumstances which must be stated in the affidavit, or the quantity of evidence necessary to satisfy the officer, before ordering publication. It simply requires that it must appear by affidavit to his satisfaction. It seems to be left to his discretion, and, in the absence of fraud and collusion, can his judgment be overruled?

There is nothing in the act directing that the summons should be placed in the hands of the sheriff, and *non est* returned thereon, nor is there anything defining what facts should exist probative of the jurisdictional facts. All this seems to have been left to the officer, and when he is satisfied, in the absence of fraud and collusion, it is final.

We do not think that the case of *Melton* v. *Walker*, 6 *S. C.* 169, applies. The attachment act does not employ the language found in the publication act. The former requires certain *facts* to appear, not to the satisfaction of the officer ordering the attachment, but absolutely. It would be proper, therefore, in attachments, that the facts relied on to found the attachment, should be stated circumstantially.

Next, as to the ground that the return to the writ in partition was fatally defective. The motion to vacate this judgment was made in part, as is stated by respondent's counsel, under the act of 1869, as to erroneous judgments, (now repealed by the act of 1880, but still of force as to this judgment,) and also under Section 158 of the code.

The act of 1869, (*Gen. Stat.* 497, § 2,) as construed in *Hill* v. *Watson*, 10 *S. C.* 275, was not intended to make any change in the legal grounds upon which relief either at law or in equity would previously have been given or refused, but simply to provide a new mode of procedure by which judgments might be assailed, to wit: by motions, applicable alike to judgments at law and to decrees in equity. Previous to this, decrees in equity could not be attacked below except by petition for rehearing, if made before the filing of the decree, or leave to file a bill of review, if made after decree filed. *Simpson* v. *Downs*, 5 *Rich. Eq.* 421. Since this act, and while it was of force, the mode of procedure in all cases was by motion, but this act, as has been

stated, furnished no new grounds upon which to vacate judgments and decrees. *Hill* v. *Watson, supra.*

As to decrees in equity, Chancellor Dunkin, in *Hunt* v. *Smith*, 3 *Rich. Eq.* 540, said: "A bill of review and motion for rehearing are entertained on similar grounds. First, they will be entertained on account of error of law apparent on the face of the decree, and any part of the record may be resorted to for the purpose of making such error of law in the decree manifest. The other ground upon which a bill of review or a motion for a rehearing will be entertained, is newly-discovered testimony."

Now, the facts upon which the Circuit judge acted in vacating the judgment of Judge Thomson on this branch of the case, were, first, that but two of the commissioners out of the three appointed executed the writ; second, that the third was never called to join; and, lastly, that the two who acted never went upon the land, but separately signed a prepared return recommending a sale. The fact that but two of the commissioners joined in the writ appeared on the face of the proceedings. Was it error of law in Judge Thomson to order the partition on such a return? We think not. The acts authorizing the appointment of commissioners in such cases expressly provide for the execution of such writs by the appointees, or a majority of them. Here, three were appointed, and two acted; this was within the acts. Judge Thomson, after a full review of the case, and after carefully reciting all the facts, both as to the service by publication, and the return of the writ by two only of the commissioners, granted the judgment. We see no error in this—none such as can be corrected by a brother Circuit judge.

But it is said that the mandate of the writ, requiring the commissioners to go upon the land, was not obeyed. It appears from the affidavits that Commissioner Hall did go upon the land—Chafee did not, the reason being, that he was well acquainted with it—had known it all his life, had hunted on it when a boy, and had frequently been on it since manhood, and that he was thoroughly prepared to say that it could not be equitably divided. Meeting Hall on his return from inspecting the land, Chafee, after consultation, agreed with Hall upon a return, which was made to the court. This we think was a substantial com-

pliance with the act by a majority of the commissioners. It was not such a subsequently-discovered fact as should vacate a judgment.

The motion was also made under Section 158, Subd. 5, of the code, which provides that where one is made a party by publication, upon good cause shown, he may be allowed to defend after judgment, at any time within one year after notice thereof, * * * but the title to property sold under such judgment, to a purchaser in good faith, shall not thereby be affected. Without undertaking now to say what the mode of proceeding should be where a party desires to avail himself of this provision of the act as to publication, or what should be the effect of such application upon the case, it is enough to say that the order below is too far-reaching here, if the motion of respondents was merely a motion to come in and defend.

The section referred to provides that property sold under the judgment to a purchaser in good faith, shall not thereby be affected. The appellant should have the opportunity of raising the question of good faith under some proceeding more formal than a motion, and to test that question upon testimony more reliable and better sifted than affidavits.

Next, as to the non-compliance. The land was sold on sales-day in December, the terms being cash sufficient to pay costs and disbursements of suit, and the balance on a credit of one year, and upon failure by purchaser to comply, then an immediate advertisement for resale, on the next sales-day, or upon some convenient sales-day thereafter, at the risk of the former purchaser. It seems that the appellant did not comply on the day of sale in December, but did comply during the month of January after, and the clerk executed titles. Why compliance was not made on the day of sale does not fully appear. If appellant refused to comply, or was wholly at fault, she could not have demanded thereafter a specific performance. *Seymour* v. *Preston*, *Spears Eq.* 486. But in the absence of fraud or collusion, we do not think that a failure to comply literally with the terms of sale as to the cash payment, the moment the hammer falls, is such failure in itself as will in every case forfeit the bid.

'Tis true that when property is offered either at public or

private sale for cash, the sale is not binding unless the cash is tendered according to the terms, and officers selling under orders should not indulge contrary to the order, but there may be reasons why cash could not be paid down at once, and why the sale, notwithstanding this, should be held good. In this case the cash portion was not a fixed portion of the purchase-money, as one-fourth, or one-third, or any other fixed proportion, but such sum as might be required to pay costs and disbursements, the balance on a credit of one year.

It may be that the exact amount of the costs and disbursements could not be ascertained on the day of sale, or the parties entitled thereto may have been willing to wait a few days. At all events, the clerk afterwards received the cash and executed titles. Had he refused to do so, it may be that appellant could not have enforced the contract, but having completed the contract, by receiving the money and executing titles, we are of opinion that it should not be set aside upon a summary proceeding like this and solely upon the ground of failure literally to comply.

In *Young* v. *Teague, Bailey Eq.* 13, where land was sold for partition as in this case, the terms required the giving of a mortgage by the purchaser to secure the purchase-money. This was not done at the purchase, nor had it been done when a proceeding was instituted to vacate the sale on that and other grounds; yet as it did not appear that the purchaser had refused to give the mortgage but was ready and willing to comply, the court held that all it could require now was that the purchaser should do then what ought to have been done at the sale.

In the case of *Young* v. *Teague,* the application was grounded upon an offer of an advance of $600 over the bid of the purchaser, and other facts showing that the party making this offer was prevented from bidding at the sale by mistake, &c. This was a strong case, and although the purchaser had not complied literally with the terms of sale in giving the mortgage, yet as the deed had been executed by the commissioner the court refused to set it aside.

The English practice of opening the biddings before confirmation does not apply in this State. *Young* v. *Teague, supra.*

When titles have been executed in this State at official sales, they are good without confirmation unless assailable for fraud, or other facts and circumstances entitling the party to equitable relief. And the better practice in such cases, unless the matter is clear, is by regular action rather than by motion to show cause. *Gordon* v. *Sims,* 2 *McCord Ch.* 160.

It does not appear, however, that the conveyance from the clerk has been set aside for fraud, but solely upon the ground that the terms of sale as to the payment of the cash portion immediately upon the sale were not complied with. We do not think that fact, in itself unexplained, when these terms were complied with within so short a time afterwards, as above, was sufficient to annul the clerk's deed.

Without prejudice to respondent's right to come in and defend under Section 158 of the code, by such proceedings as may be legal and proper, in our opinion the service in this case by publication was sufficient; the return to the writ in partition by two of the commissioners out of three named, in the absence of fraud, was all that was necessary, and that the execution of the deed to the appellant by the clerk must stand unless assailed by some more effective ground of equitable relief than the mere unexplained fact that the cash portion of the sale was not immediately paid upon the sale.

The judgment of this court is that the judgment of the Circuit Court be reversed.

McIVER and McGOWAN, A. J.'s, concurred.