LONG v. McKISSICK.

1. ATTORNEY—SHERIFF'S SALES—PRINCIPAL AND AGENT—CONTRACT. An attorney bidding off land at an execution sale, and requesting that it be charged to him, as attorney, and upon request refusing to disclose his principal, is individually bound for the bid, and if he some time afterward disclose his principal, he will not thereby be relieved.

2. IBID.—IBID.—IBID.—IBID.—An attorney bidding off land at an execution sale, as attorney, and there refusing to give his principal, makes a contract to purchase such land of the sheriff in his individual capacity.

3. SHERIFF'S SALES—EVIDENCE.—An entry made by a sheriff in his sales book of a sale of land under execution is best evidence of such sale, and not the memoranda made by him at auctioneer's block.

4. EXCEPTIONS based on misconception of charge.

5. SHERIFF'S SALES—WARRANTY.—There is no warranty by a sheriff of the number of acres in a tract of land sold by him under execution by metes and bounds.

6. CHARGE.—Parts of charge excepted to were not on the facts, but explanatory of the legal effect of the record.

7. JUDGMENT—EVIDENCE.—Record constituting judgment roll, introduced in evidence without objection, is competent evidence of the judgment.

Before GARY, J., Union,                    , 189 .    Affirmed.

Action by J. G. Long, as sheriff of Union County, against E. P. McKissick, as administrator of I. G. McKissick, for the amount of a bid by I. G. McKissick for a tract of land. The following is so much of the charge as is necessary:

Now, I charge you as matter of law that where land is sold under an execution regularly issued, and the legal formalities have been observed by the sheriff, and the bidder at such sale has the land struck off or knocked down to him, and an entry of such bid is entered in the salebook

which is required by law to be kept by the sheriff, and such bidder refuses or declines to comply with his said bid, the sheriff has one of two courses to pursue: he has a right, under the law, to resell the premises at the risk of this defaulting purchaser, or he has the right to bring his suit against him for the amount of his bid. Now, your first inquiry will be, did Mr. McKissick bid at that sale? Was he the last and highest bidder, and did the sheriff accept his bid? If so, did he decline to give the sheriff the name of the party for whom he was bidding; if he did refuse to disclose the name of his principal, or for whom he was bidding, he was individually liable, and the sheriff had a right, under the law, to sue him for the amount of the bid, · or he had a right to resell the premises at his risk, and hold him responsible for the difference in what the land brought at the second sale and what it was bid off for at the first sale. It is contended by the defendant as a defense to this that he incurred no personal liability, by reason of the fact that he was bidding for some one else. Then it is his duty when the sheriff requested of him to know for whom he was bidding, if he was bidding for any one else, to disclose the fact; and if he failed to disclose the fact, and the sheriff accepted and entered his bid in the book for that purpose, he became personally liable to the amount of that bid, and interest on the same to the present time. That law has been recently settled that I have announced to you, in a recent case that went up from my town. You know some of the litigants, possibly. Lieutenant Governor Timmerman was the president of what he conceived to be a fire insurance company, and they had an organization in Edgefield under that name, and he, as president of that insurance company, issued a policy of insurance to a member of the company, and signed his name to it, "W. H. Timmerman, president," putting the word "president" after his name. It afterwards developed that the insurance company had no legal existence; although he thought at the time that he issued his policy that he represented the president of the insurance

company, it was afterwards developed, as I stated, that the company had no legal existence. A loss occurred under that policy, and a member's premises were insured and destroyed by fire, and he brought a suit against Dr. Timmerman for the amount of the value of the policy. The defense was set up that Dr. Timmerman was not liable individually, for the reason that he acted in a representative capacity—that is, as president of this company; and the Circuit Judge instructed the jury as I am going to read to you now, and those instructions were carried to the Supreme Court, and as late as last May they confirmed what was said to the jury in that case, Judge Earle being the Judge, and settled it as the law of South Carolina; and that I am going to give you as a law, irrespective of any personal feeling or preference that I might have in this case, for I am free to admit to you that if I were allowed to have personal preferences, my preference would be for the defendant in this case, because they were my personal friends, but the law does not sanction such relation in administering justice; the law, as I have stated, is inflexible, and I am to give it to you as I conceive it to be, irrespective of the consequences, and you are expected to find a verdict in accordance with the law and the facts, irrespective of the consequences of your verdict. Now, here is what the Circuit Judge charged the jury in that case: "Did they sign a paper called a policy of insurance, and take his money and deliver him that policy under those circumstances, that led him to believe he was taking out a policy of insurance in a corporation, then I charge that whenever one as an agent assumes to act as another, and that other was not authorized himself to do the act, the agent is personally liable. The law requires every one, when he assumes to act for another, to disclose his principal, to say who his principal is, and if he does not do it, and you make a contract with him, you can sue him, you make him individually liable." Now, did Mr. McKissick decline or refuse to give the name of his principal to the sheriff? If so, he was individually liable for that bid.

Now, I charge you further, that at sheriff's sales there is no warranty either as to the title or the amount of property sold, and you readily see the reason: that sheriff's sales differ from other sales—private sales or sales by the Court—in this particular, at a sheriff's sale they do not sell the land advertised to sell, although that is a common acceptation, but they simply sell what interest in that land the judgment debtor has; and if you buy his interest, and it afterwards develops that he has none, you are still liable on your bid, because you have offered so much for his interest in open market, and it is for you to determine before you bid what his interest is worth.    Now, even if it should appear that at a sheriff's sale one has bought the interest of the judgment debtor in a certain tract of land and paid his money for it, and then suit is brought to recover the land, and he is defeated in the suit, he has no right to recover his money back, because he has paid that much for the interest that this particular judgment debtor had in that tract of land; therefore, there is no warranty in a sheriff's sale either as to the title or as to the amount of land bought, because, as I told you, you are not selling the land, but selling the interest of the judgment debtor in that particular tract of land, and if it develops that he has no interest in it, why you are still liable for your bid; and that is why it is that sheriff's sales, as a common rule, are said to be somewhat shaky.    If you go to a private individual and contract for the sale of so many acres of land, and you pay him his money, and it develops that he has not got that land, why you can go on him and recover the money, because you bought the land; but at a sheriff's sale, as I have already stated to you, you buy the interest of the man, and it is for you to determine before you bid how much his interest is worth to you.

Now, this looks to me like it is a very plain case.    There are no complications, either of law or serious complications, as I take it, of fact.    If the sheriff regularly advertised that land, did he sell it in the regular form prescribed by law, in open, public, fair sale?    If so, Mr. McKissick bid it off, and

said, "charge it to me as attorney," and does not disclose for whom he is attorney, that would bind him. Fraud is not necessary—he need not have been acting fraudulently; that was the point that counsel made for Dr. Timmerman—that here was an old gentleman who *bona fide* believed that he was the president of an insurance company, and that he was incapable of committing fraud, and here is what the Supreme Court says upon that, through the Chief Justice, who delivered the opinion in this case: "The Court takes pleasure in saying that the evidence does not justify any imputation of moral fraud or intentional wrong on the part of the defendant, and, indeed, we do not understand that any such imputation is made; but, under the principles laid down in the case above stated, in which cases of the highest authority elsewhere are reviewed, we must hold that the absence of moral fraud or intentional wrong-doing on the part of the defendant is not sufficient to relieve him from liability." That is the law of the case; that is the law of this State— that is the elementary law. If it were otherwise, a judgment creditor could never sell and collect his debts; if the purchaser were permitted to go to the sheriff's office when he was crying a sale and say, charge that to me—"attorney," "doctor" or "agent"—and the agent was not disclosed, and he did not comply, that is a postponement of the sale, the administration of the law to enforce the collection of debts would be blocked in a measure; and hence it is, when parties go to a public sale and they bid at it, they are individually responsible for their bids, unless they state to the sheriff for whom they are bidding; and that is a wise provision of the law, because the sheriff might say, "That party is irresponsible, I wont credit him with this, but I will put up the place and cry it over," and he would cry it over; and it is for that reason that in sheriff's sales the name of the real purchaser should be disclosed, and if the parties fail to disclose the true principal, they themselves assume the payment of the bid; and the sheriff would have a right, and it would be his duty, either to sue on the bid or put it up and

resèll it, and then sue for the difference, if there was a difference, in the bid originally and on the second sale—that would be the measure of damages.

The defendant requests the Court to charge the jury:

First. "If the jury find that the plaintiff knew that the defendant's intestate was bidding for another person, and understood him to refuse to bind himself individually or personally, the verdict should be for the defendant." I charge you that as law, with this qualification, that if the sheriff asked the question for whom he was bidding, and he declined to give the name of his principal, that would bind him, and he would be bound by the bid, as I have already charged you.

Second. "That if the jury find that the defendant's intestate did not intend to contract in his personal and individual capacity, but only in his representative capacity, as attorney for another, and the plaintiff knew it, and accepted his offer or bid made in the latter capacity, the defendant's intestate incurred no personal or individual liability, and the verdict should be for the defendant." I charge you that is law. What was the contract between the parties? The law presumes a contract when one individual bids at a sheriff's sale and the sheriff accepts it, that it is a contract—the contract being that "I will pay you so much money and you will give me a deed to that tract of land."

Third. "That a contract presupposes a meeting of minds, and if the minds of the plaintiff and of the defendant's intestate did not meet as to the sale, there was no contract, and the verdict should be for the defendant." With that same qualification that I have indicated all the way through, that if the sheriff asked the question for whom are you bidding, and he does not give it, the sheriff could not charge any one else but the party who bid, if he refused to tell or disclose the name of the person for whom he is bidding.

Fourth. "That the plaintiff has brought his action as upon a contract; that the liability of the defendant's intestate, if liable at all, was in an action for damages and not in an action upon a contract, unless the jury find that the minds

of the parties met upon a contract." I charge you that the sheriff had a right to bring this action upon that bid. The law, as I say, would imply that there was a contract between the parties; Mr. McKissick by his bid would agree to give so much for the land, and the sheriff as the officer of the law would agree to make a deed to it, or the interest of this party in it. That is a contract.

Fifth. "If the jury find that the defendant's intestate refuse to contract in his individual capacity, and that the plaintiff understood that he did not intend to contract in his individual capacity, but that he refused to so contract, that he incurred no personal liability, and the verdict should be for the defendant." That I charge you is the law. If the sheriff knew McKissick was not bidding in his individual capacity, and he knew for whom he was bidding, the agency was disclosed—why then the bid would be the bid of the principal and not the bid of Mr. McKissick.

Sixth. "Before plaintiff can recover, it is necessary for him to show a valid judgment which was a lien upon the land of Joseph Kelly, and the roll introduced by the plaintiff does not contain a judgment which would constitute a lien upon the land of Joseph Kelly unless it was entered in the judgment book; and unless the jury find from the evidence that the judgment was so entered, no lien was obtained upon the land of Joseph Kelly, and no valid sale would have been made without such lien." That I refuse to charge.

Seventh. "The plaintiff cannot recover unless he has proved that the land was sold under a valid judgment which was a lien upon the land of Joseph Kelly, and that before a judgment or decree of the Court becomes a lien upon land it must have been entered in the abstract of judgments, and if the plaintiff has failed to show that the judgment was so entered, he cannot recover." I think that is the law: before a judgment becomes a lien it must be regularly entered in the book down here, the levy must be made and advertised; those are the links in the chain of title of the purchaser. At a sheriff's sale, he must show the judgment,

execution, show that it was advertised, and must show that it was sold. That is necessary. You have heard the testimony on that point.

Mr. Hydrick: I wish to make a point. By the Court: I don't care to hear any more points. That is what I conceive to be the law of the case. Take the record. If you find for the plaintiff, say, "We find for the plaintiff the lands in dispute." If you find for the defendant, simply say, "We find for the defendant," sign your name, and put the word "foreman" under your name.

Foreman of the jury: In regard to the acreage of the land, does it make any difference; it was advertised 393 acres, more or less, and the tract only contained 243 acres, I think. Has that anything to do with it, whether the party might have been misled by the acreage at that time? By the Court: I undertook to explain that in this way: That at a sheriff's sale there is no warranty as to the number of acres or as to the validity of the title; that the number of acres is put in it as describing a particular lot or a particular plantation—it is simply descriptive of the plantation which is being sold; and if that tract is being sold, the sheriff does not warrant in that sale that that tract contains the number of acres that it is said to contain, but he simply says, "The interest of the judgment debtor in a certain plantation, containing so many acres, more or less"—it is to give the bidder a description of what land the interest of the judgment debtor is being sold in. So, as I say, there is no warrant by the sheriff that it contains that many acres of land. Now, the question frequently comes up in this way: That where land is sold for so much per acre, if he had advertised it to be sold at so much per acre and it had been bought on the assumption that there was that many acres in it, that would have been an injustice to the bidder; but where it is not sold by the acre, but sold in bulk as containing so many acres, the sheriff does not warrant that it does contain that number of acres.

Mr. Munro: You charge two requests in our favor, and we think those requests decisive of the question, because we say

there is no proof; it is for the jury, however, to say whether there was any proof; we think those two requests are decisive of the case, and I don't think the jury heard your Honor. Mr. Hydrick: That is the point I wanted to state. By the Court: I ask the jury if they heard it; I am a little hoarse. Foreman: I would like to hear them read again. If we find for the plaintiff, do we have to find interest from the time of the sale? By the Court: Yes, seven per cent., legal rate of interest. I wish to correct what I said as to the form of your verdict. I told you, if you find for the plaintiff, to find for the land. If you find for the plaintiff, you find the amount of the bid, with interest from the date of sale. If you find for the defendant, you say: "We find for the defendant."

Mr. Munro: The fifth and seventh. By the Court: "Before plaintiff can recover, it is necessary for him to show a valid judgment which was a lien upon the land of Joseph Kelly, and that the roll introduced by plaintiff does not contain a judgment." That I positively refuse to charge.

Mr. Munro: The fifth and seventh. By the Court: "If the jury find that the defendant's intestate refuses to contract in his individual capacity, and that the plaintiff understood that he did not intend to contract in his individual capacity, but that he refused to so contract, then he incurred no personal liability, and the verdict should be for the defendant." That, as I say, I charge you, with the modification that if it was demanded of him who his principal was, and he refused to give him, the sheriff in that position could have no one to whom he could charge the bid, and if the party bidding then did refuse to disclose his principal, he would become personally liable on his bid.

Mr. Munro: Seventh and eighth. By the Court: "The plaintiff can not recover unless he has proved that the land was sold under a valid judgment which was a lien upon the land of Joseph Kelly, and that before a judgment or decree of Court becomes a lien upon land, it must have been entered in the abstract of judgments; and if the plaintiff has failed to show that said judgment was so entered, he cannot

recover." That is law, as I charge you. I thought I made it plain to you that a judgment must be entered first; upon that judgment an execution must be entered; that is all necessary to the plaintiff's chain of title; an execution is then handed to the sheriff—"lodged" with the sheriff, it is called; he then levies upon the land under that execution, advertises it and sells it; and all those formalities must be complied with before there is the authority to sell that real estate under a judgment. Mr. Munro: That book, your Honor holds, must be proven?

By the Court: Now the eighth. I refuse the eighth, on the ground that I have explained to you in reference to that as fully as I think it necessary; I think you understand it. Mr. Wallace: May I speak? I would like to, if your Honor will allow me. The judgment while it has to be be entered— By the Court: No, I wont hear you on that. Take the record, Mr. Foreman and gentlemen of the jury, and find a verdict; write your verdict on the complaint. Mr. Wallace: We will take a nonsuit. Mr. Munro: We object. By the Court: I don't think you can take it at this stage.

The jury came out for information. By the Court: Have you agreed upon your verdict? Foreman: No, sir; one of the jurors asked me to request you to state whether the law requires that Col. McKissick give the name right then and there at that time. By the Court: It requires him to disclose it before the entry is made in the sheriff's book—that is the contract, that is accepting the bid; when he bids off and he enters in the sheriff's book, that is the trade, that is the contract, that is the consummation of the contract; and when he says, "Charge it to me as attorney," if he said that, that was a contract with the party, and if he fails to disclose his principal before that bid was accepted in that condition, he would be personally liable. Mr. Munro: Would your Honor object to instructing the jury that if no evidence has been offered of entering the judgment in the book of abstracts— By the Court: No, sir; because I don't think that it is material in this case, for this reason: it is not set up as

one of the defenses in the answer. Mr. Munro: We deny it. By the Court: You don't set up that as one of the specific defenses in the answer, and I don't see how the jury— Mr. Munro: Let me remind your Honor, we deny that there is any record of judgment, and, therefore, he is bound to prove it. Foreman: The jury wanted to know whether the sheriff makes his entry right there at the spot of sale on his book. By the Court: Yes, that is law. The law requires of the sheriff that when he makes a sale of a tract of land he shall have a sales book or a book of sales, in which he is required by law to enter these sales, and while they are out on the steps what is known as a memorandum book that they carry there—the Supreme Court have decided that an entry in that book is simply for the convenience of the sheriff. He must enter in this book of sales, and when that is done that is a memorandum in writing of the contract. It is law with reference to trades in real estate that no agreement, verbal agreement, between parties in reference to the sale of land is binding on the parties; therefore, it must be a written memorandum when it comes to lands. If you make a trade with reference to lands, there must be a written memorandum. The courts have held that the entry in the sheriff's book is the written memorandum of that sale with reference to real estate, and when that is entered there, that is the consummation of the contract of purchase. Mr. Munro: It is alleged in the complaint that judgment was entered on the abstract of judgments, and we deny it. By the Court: I charge the jury this: That the judgmant roll about which there is so much contention here, is sufficient proof of the existence of the judgment; the complaints and those papers which were offered there is a sufficient proof of the judgment to sustain a sale under.

The defendant requested the Court to charge the seven propositions of law as contained and set forth in his Honor's charge, and also an eighth request to charge, which was as follows: "The plaintiff had the right to treat and contract with I. G. McKissick in his representative capacity even

though I. G. McKissick declined to give the name of the person whom he represented, and if plaintiff elected to treat and contract with I. G. McKissick in his representative capacity after he had declined and refused to treat and contract in his individual capacity and to give the name of the person for whom he was contracting—trusting that I. G. McKissick would in due time give him the name of the person for whom he was contracting—the plaintiff could not afterwards recover of I. G. McKissick in his individual capacity, if he afterwards, in due time, disclosed his true principal, and if said principal was not insolvent."

The jury found a verdict for the plaintiff  From the judgment entered thereon the defendant appeals, on the ground that his Honor, the presiding Judge, erred in overruling defendant's demurrer to the complaint on the ground that it does not state facts sufficient to constitute a cause of action.

First. Because it appears upon the face of the complaint that there was no meeting of the minds of the plaintiff and the defendant intestate upon any contract upon which the defendant's intestate is bound in his individual capacity, and because it appears that the plaintiff elected to treat and did treat and contract with the defendant's intestate in his representative capacity, as the attorney for another, and it is not alleged that he treated or contracted with him in his individual capacity, or that he did not in his representative capacity make a valid binding contract for a solvent principal.

Second. Because it appears upon the face of the complaint that the defendant's intestate contracted only in his representative capacity as the attorney for another, and he can not be made liable in his individual capacity in this action upon such contract.

Third. In admitting in evidence the sheriff's sales book, when it appeared that said book was not the book in which the original entry and memorandum of the sales had been made by the plaintiff.

Fourth. In charging the jury if the defendant's intestate

was the highest and last bidder at the sale, and if his bid was accepted and he declined to give the name of the person for whom he was bidding, he was individually liable.

Fifth. In charging the jury that the law as laid down in the case of *Lagrone* v. *Timmerman*, 46 S. C., 372, is the law applicable to this case.

Sixth. In charging the jury: "Now, did Mr. McKissick decline or refuse to give the name of his principal to the sheriff? If so, he was individually liable for that bid."

Seventh. In charging the jury as follows: "Now, I charge you further that at sheriff's sales there is no warranty either as to the title or as to the amount of property sold, and you readily see the reason that sheriff's sales differ from other sales, private sales or sales by the Court, in this particular: at a sheriff's sale they do not sell the land advertised to sell, although that is a common acceptation, but they simply sell what interest in that land the judgment debtor has."

Eighth. In charging the jury as follows: "Now this looks to me like it is a very plain case. There are no complications either of law or serious complications, as I take it, of fact. If the sheriff regularly advertised that land, did he sell it in the regular form prescribed by law, in open, public, fair sale? If so, Mr. McKissick bid it off, and says, 'charge it to me as attorney,' and does not disclose for whom he is attorney, that would bind him."

Ninth. In not charging the defendant's request to charge number one (to wit: if the jury finds that the plaintiff knew that the defendant's intestate was bidding for another person, and understood him to refuse to bind himself individually or personally, the verdict should be for the defendant), without the following qualifications, to wit: "I charge you that this is law, with this qualification, that if the sheriff asked the question for whom he was bidding and he declined to give the name of his principal, that would bind him, he would be bound by the bid, as I have already charged you."

Tenth. In qualifying the defendant's request to charge, numbered three, to wit: 3d. "That a contract presupposes a

meeting of minds, and if the minds of the plaintiff and of the defendant's intestate did not meet as to the sale, there was no contract, and the verdict should be for the defendant." By saying: "With that same qualification that I have indicated all the way through, that if the sheriff asked the question, for whom are you bidding? and he does not give it, the sheriff could not charge any one else but the party who bid, if he refused to tell or disclose the name of the person for whom he was bidding."

Eleventh. In refusing to charge the defendant's request to charge numbered four, to wit: 4th. "That the plaintiff has brought this action as upon a contract; that the liability of the defendant's intestate, if liable at all, was in an action for damages and not in an action upon a contract, unless the jury find that the minds of the parties met upon a contract. I charge you that the sheriff had a right to bring this action upon that bid. The law, as I say, would imply that there was a contract between the parties. Mr. McKissick by his bid would agree to give so much for the land, and the sheriff as the officer of the law would agree to make a deed of it, or the interest of this party in it. That is a contract."

Twelfth. In qualifying the defendant's request to charge numbered five, to wit: 5th. "If the jury find that the defendant's intestate refused to contract in his individual capacity, and that the plaintiff understood that he did not intend to contract in his individual capacity, but that he refused to so contract, that he incurred no personal liability, and the verdict should be for the defendant," by adding the following: "If the sheriff knew that McKissick was not bidding in his individual capacity, and he knew for whom he was bidding, the agency was disclosed, why then the bid would be the bid of the principal and not the bid of Mr. McKissick;" and by further modifying said request, when reading the same over a second time to the jury, by saying: "If it was demanded of him who his principal was and he refused to give him, the sheriff in that position could have no one to whom he could charge the bid, and if the party bidding then did refuse to

disclose his principal, he would become personally liable on his bid.''

Thirteenth. In refusing to charge the defendant's request to charge numbered six, to wit: ''Before plaintiff can recover, it is necessary for him to show a valid judgment which was a lien upon the land of Joseph Kelly, and the roll introduced by plaintiff does not contain a judgment which would constitute a lien upon the land of Joseph Kelly unless it was entered in the judgment book, and unless the jury find from the evidence that the judgment was so entered, no lien was obtained on the land of Joseph Kelly, and no valid sale could have been made without such lien.''

Fourteenth. In charging in response to the following inquiry from the foreman of the jury, to wit: ''In regard to the acreage of the land, does it make any difference if it was advertised 393 acres, more or less, and the tract only contained 243 acres, I think. Has that anything to do with it, whether the party might have been misled by the acreage at that time?'' as follows: ''at a sheriff's sale there is no warranty as to the number of acres or as to the validity of the title; that the number of acres is put in it as describing a particular lot or particular plantation—it is simply descriptive of the plantation which is being sold, and if that tract is being sold, the sheriff does not warrant in that sale that that tract contains the number of acres that it is said to contain, but he simply says: the interest of the judgment debtor in a certain plantation, containing so many acres, more or less—it is to give to the bidder a description of what land the interest of the judgment debtor is being sold in.''

Fifteenth. In refusing to charge the defendant's request to the charge numbered eight, which was as follows: ''The plaintiff had the right to treat and contract with I. G. McKissick in his representative capacity, even though I. G. McKissick declined to give the name of the person whom he represented; and if plaintiff elected to treat and contract with I. G. McKissick in his representative capacity after he had declined and refused to treat and contract in his indi-

vidual capacity and to give the name of the person for whom he was contracting—trusting that I. G. McKissick would in due time give him the name of the person for whom he was contracting—the plaintiff could not afterward recover of I. G. McKissick in his individual capacity, if he afterwards in due time disclosed his true principal, and if said principal was not insolvent."

Sixteenth. In charging that the law required that defendant's intestate should disclose the name of his principal before the entry is made in the sheriff's book, to avoid personal liability.

Seventeenth. In charging the jury as follows: "I charge the jury this: that the judgment roll about which there was so much contention here is sufficient proof of the existence of the judgment; the complaints and those papers which were offered there is a sufficient proof of the judgment to sustain a sale under."

*Messrs. Munro & Munro* and *Hydrick & Sawyer*, for appellants. The latter cite: *Memorandum best evidence of sale:* 1 Rich., 407. *Rule that agent is bound if does not disclose principal, does not always apply:* McC., 395; 1 Rich., 504, 506; 36 S. C., 551. *Error to charge a correct principle inapplicable to case:* 15 S. C., 93. *Judgment book evidence of judgment:* Rev. Stat., 783; Code, 302, sub. 1, 2; 10 S. C., 278; 19 S. C., 507. *Charge on fact:* 39 S. C., 281; Code, 300, 301.

*Mr. J. Clough Wallace*, contra, cites: *Entry in sale book proper evidence of sale:* 1 McM., 255; 4 Strob., 213; 1 Rich., 410; 2 Hill Ch., 580; 11 Rich., 396. *Bidder held personally unless he disclose his principal:* 4 Strob., 213; 1 McM., 255; 5 Cush., 210; 12 Ves. Jr., 349; 8 M. & W., 834. *No warranty of acres when sold in bulk:* 4 McC., 434; Harper, 290; 13 S. C., 210; 35 S. C., 405. *Charge:* 47 S. C., 513. *Roll sufficient evidence of judgment:* 1 Hill Ch., 369; Code, 289, 310; 13 S. C., 254; 12 Met., 363.

July 31, 1897. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This is an action originally instituted against the late I. G. McKissick and John H. Kelly to recover the amount of a bid made by the said McKissick for a tract of land, when it was offered for sale as the property of one Joseph Kelly by the plaintiff, under an execution issued to enforce a judgment in favor of Junius R. Page and others against the said Joseph Kelly and others. On the motion of the original defendants, the plaintiff was required to elect against which of the two original defendants he would proceed; and he elected to proceed against the said I. G. McKissick, and he dying intestate soon after, the defendant named in the title of this case was substituted as his administrator.

The case came on for trial before his Honor, Judge Ernest Gary, and a jury, and resulted in a judgment in favor of the plaintiff. From that judgment defendant appeals upon the several grounds set out in the record. For a full understanding of the points made by the appeal it will be necessary for the reporter to set out in his report of the case a copy of the charge of the Circuit Judge, together with the exceptions. We do not propose to consider the several exceptions, seventeen in number, *seriatim*, but, on the contrary, will take up the several questions which are presented by the exceptions.

The defendants demurred to the complaint, upon the ground that the facts stated therein were not sufficient to constitute a cause of action; and in accordance with the rule filed two specifications in writing, setting forth the particulars wherein the complaint is claimed to be defective. Although there are, in form, two specifications, yet, as it seems to us, they both make the single point that the complaint shows on its face that the contract as set forth in the complaint upon which the action is based, was a contract made by the plaintiff with the defendant's intestate in a representative and not in his individual capacity. The complaint, after alleging in the first

paragraph the official character of the plaintiff, and in the second paragraph the judgment under which the land was levied on and offered for sale by the said sheriff, proceeds in the third and fourth paragraphs as follows: "*Third.* That at said sale plaintiff knocked down said land to the defendant, I. G. McKissick, for the sum of $900, he being, at that price, the highest and last bidder therefor; that said defendant told plaintiff to charge the land to I. G. McKissick, attorney; that at the demand of J. C. Wallace, attorney for the judgment creditors, plaintiff demanded of said defendant the name of his principal, the real purchaser, and, at the same time, informed him that, if he did not disclose his principal, he would be personally liable for the purchase; that said defendant directed him to charge the land, as he had before directed him to do, to I. G. McKissick, attorney; and under direction of J. C. Wallace, attorney for the judgment creditors, plaintiff did charge said land and sale in and on his sale book to I. G. McKissick, attorney, at $900. *Fourth.* That said defendant failed and refused to comply with his bid and complete said purchase, and long after said sale informed plaintiff that he bid off said land as the agent of John H. Kelly, who was the real purchaser." Taking these allegations to be true, as they must be taken to be, under the demurrer, we think that, instead of showing that the contract was made by Mr. McKissick in a representative capacity, they show that the contract was made by him in his individual capacity, and that he thereby became personally liable to fulfill such contract. In Story on Agency, sec. 269, quoted with approval in *Miller* v. *Ford,* 4 Strob., at page 216, the rule is thus laid down: "A person contracting as agent will be personally liable, whether he is known to be an agent or not, in all cases when he makes the contract in his own name, or voluntarily incurs a personal responsibility, either express or implied, wherever from the form of the transaction he has become a direct personal party to the contract." Again, as is said by the same distinguished author at sec. 155, and likewise quoted with approval in the case above

cited: "If the terms of a written contract, made by an agent, show explicitly that he is an agent, and that he means to bind the principal and not himself, that construction will be adopted, however inartificial the instrument may be; but if the terms are not thus explicit, although it may appear that the party is an agent, he will be deemed to have contracted in his personal capacity." Again, in *Davenport* v. *Riley*, 2 McC., 198, it was held that where a factor dealing for a principal, but concealing that principal, delivers goods in his own name, the person contracting with him has a right to consider him, to all intents and purposes, as the principal, and may bring an action on a breach of warranty. So in *Conyers* v. *Magrath*, 4 McC., at page 394, it was laid down as a settled, conceded rule: "That if an agent sell, without disclosing the name of his principal, he will, in respect to the purchaser, be regarded as the principal." Of course, the converse of this is likewise true: That if an agent buy without disclosing the name of his principal, he will, in respect to the vendor, be regarded as the principal. The rule is thus stated, in general terms, in *Welch* v. *Goodwin*, 123 Mass., 71—reported also in 25 Am. Rep., 24: "One who acts as the agent of an undisclosed principal may be treated as principal by the party with whom he deals." This rule has not only the support of authority but also that of reason and common sense. If a person should be permitted to go through the form of entering into a contract with another, as agent of a third person, and fail or refuse to disclose the name of his principal, inasmuch as the contract could not be enforced against the unknown principal, it could not be enforced at all unless the agent could be held personally liable, and thus the transaction would become nugatory. It seems to us this rule is especially applicable to sales made by the sheriff under execution; for if it were otherwise, it would be very easy for a defendant in execution to secure a postponement of the sale of his property by procuring some one to attend the sale and bid off the property as the agent of an undisclosed principal. It is clear that the facts alleged

in the third paragraph of the complaint—that defendant's intestate bid off the land, and directed the sheriff to set down the bid "to I. G. McKissick, attorney," that when the name of his principal was demanded, he failed or refused to give it, and after express notice that, unless he disclosed the name of his principal, he would be held personally liable, he still repeated his direction to the sheriff to set down the bid "to I. G. McKissick, attorney"—are quite sufficient to fix upon the defendant's intestate personal liability for the amount of the bid.   The allegation in the fourth paragraph of the complaint, that "long after said sale the defendant informed the plaintiff that he had bid off said land as the agent of John H. Kelly, who was the real purchaser," even if not eliminated from the complaint by the discontinuance of the action as against said Kelly, cannot affect the question, for the obvious reason that this information was not communicated to the plaintiff until "long after" the contract between the plaintiff and the defendant's intestate was closed.   That contract was closed when the hammer fell and the bid was entered in the sheriff's sale book.   There was no error, therefore, on the part of the Circuit Judge in overruling the demurrer.

The next position taken by appellant is that the plaintiff had no cause of action on a *contract*, but that defendant's intestate, if liable at all, was liable only in an action for a tort.   The frank admission of the counsel for appellant, that the decided cases are against him on this point, would seem to be sufficient to dispose of this position; for it is clear, from what we have said above, that the effort of counsel to differentiate those cases from the present by the contention that Mr. McKissick refused to contract as an individual and insisted that the contract, if made at all, should be made with him as the agent of another, cannot be sustained, because the contention upon which it is based is not true either in law or fact.   For, as we have shown, when a person enters into a contract as agent for another, whose name he fails or refuses to disclose, the law fixes upon him

a personal liability. The undisputed facts are that when Mr. McKissick was called upon to disclose the name of his principal, he refused, or at least failed, to do so, whereupon he was distinctly notified that unless he disclosed the name of his principal, he would be held personally liable, and that, after such notice, he persisted in refusing to disclose the name of his principal, without any disclaimer of such liability, but simply repeating his previous direction to set down the bid "to I. G. McKissick, attorney." There can be no doubt, therefore, that the understanding of the plaintiff was that Mr. McKissick was personally liable for the amount of the bid, and in this understanding Mr. McKissick must be regarded as having acquiesced—silently, at least. For if the defendant's intestate repudiated such understanding, he should have said so when distinctly notified that if the bid was entered as he directed, he would be held personally liable, whereupon the sale would have then proceeded. But not having done so then, neither he nor his representative can now be permitted to repudiate the understanding upon which the sheriff manifestly acted.

The next position taken by the appellant is that the entry in the official sale book of the sale was not the original entry, but that the memorandum book in which the original entry was made, was the best evidence, and should, therefore, have been produced. The law requires the sheriff to enter in his official sales book, and such book affords the best evidence of such sales. The mere fact that a memorandum book, or sometimes a slip of paper, is used at the auctioneer's block to enter the items of the sale, which are afterwards entered in the official sale book, does not make such memoranda the best evidence of such entries. It is well known that sales by the sheriff are usually made out of doors, sometimes in bad weather, and to require the sheriff to take a ponderous book constituting a part of the records of his office out to the auctioneer's block and there make the entries in it the very moment after the sale, would be not only a harsh and unreasonable requirement, but would

be far from conducive to the proper preservation of such book, and to the neat and orderly entries proper to be made in such book. Besides, the authorities show that this position cannot be sustained. See *Ep. Church of Macon* v. *Wiley*, 2 Hill Ch., at page 590, where it is said by Harper, Ch.: "I do not understand the objection to apply to the entry in the auctioneer's book, but to the pencil memorandum made on the land at the moment of sale, which it was thought constituted the true memorandum. But this is contrary to the universal understanding. The entry in the auctioneer's book was made as early as practicable." So here, in the absence of any evidence to the contrary, we must assume that the sheriff did his duty, and made the proper entries in his sale book as early after the sale as practicable. So it was said by O'Neall, J., in *Elfe* v. *Gadsden*, 1 Strob., at page 231: "It is allowable for the sheriff to keep his private memoranda, and from them to make the entry required by law in the official book." To the same effect is the case of *Christie* v. *Simpson*, 1 Rich., 407. The points raised by the 4th, 6th, 9th, 10th, 12th, 15th, and 16th exceptions are but repetitions in different forms of the same points which have already been considered and disposed of. These exceptions must, therefore, be overruled.

Exception 5 imputes error to the Circuit Judge in charging the jury that the law as laid down in the case of *Lagrone* v. *Timmerman*, 46 S. C., 372, is the law applicable to this case. This is based upon a misconception of the charge. What was said in that case was merely referred to by the Circuit Judge as illustrative of the principle of law applicable to this case; and in this there was no error.

The 7th and 14th exceptions are so manifestly without foundation that it is scarcely necessary to do more than to say so. It cannot be denied that there is no warranty at sheriff's sales, where the rule is *caveat emptor*. The mere fact that there is a deficiency in the number of acres contained in the land is no defense to an action for the amount of the bid. The land was advertised by correct metes

and bounds as containing 393 acres, *more or less*, and it certainly would be a novel idea to hold that the sheriff thereby represented that the land contained 393 acres, and there was no testimony tending to show that any other representation as to the number of acres was ever made by the sheriff or by any one else. It is true, that there is an allegation in the answer, that the plaintiffs in the execution under which the land was sold and the plaintiff herein, represented, falsely and fraudulently, that the land contained 393 acres, but there is not a particle of testimony to sustain such an allegation. On the contrary, the testimony tends to show that the defendant and those for whom he claimed to have been acting, knew as well if not better than any one else the true area of said land. These exceptions must, therefore, be overruled.

The 8th exception, as we learn from the argument, was intended to impute error to the Circuit Judge in violating that clause of the Constitution which prohibits a judge from charging on the facts. We are unable to discover in the language quoted in this exception, or anywhere else in the charge, any violation of this constitutional provision. So, too, as to the 17th exception, which is based upon the same ground. The Judge simply instructed the jury, as it was his duty to do, as to the *legal* effect of the record, which was offered in evidence without objection. Both of these exceptions must be overruled.

There is no basis for the 13th exception. For even conceding, what we are not to be understood as conceding, that the "judgment book" was the highest and best evidence of the judgment under which the land was sold, yet the record constituting the judgment roll having been introduced without objection, as the "Case" shows, would thereby become competent evidence of the judgment, and the question sought to be raised by this exception cannot now be raised, and hence cannot now be considered. This exception must likewise be overruled.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE GARY did not sit in this case.