## 9875

### BREZEALE *ET AL.* v. ROACH.

#### (95 S. E. 127.)

1. EXECUTION—SALE—RIGHT OF BIDDER TO QUESTION TITLE—EQUITY.— Ordinarily, after a purchaser at an execution sale has bid off the property sold, it is too late for him to question the title, and he must comply with his bid, a rule modified where the sale is had pursuant to order of a Court of equity.

2. EXECUTION — SALE — RIGHT OF PURCHASERS TO APPLY PRICE TO REMOVE INCUMBRANCE.—When purchasers of land at execution sale bought the title incumbered by a mortgage and a lien, they could not apply the purchase price to remove the mortgage incumbrance, since the rule that, after a purchaser at execution sale has bid off the property, it is too late for him to question the title, applies to incumbrances on the title as well as to insufficient title.

3. EXECUTION—SALES—BIDS—RULE TO SHOW CAUSE—DIRECTION AS TO
   COSTS AS SURPLUSAGE.—One rule to show cause why they should
   not comply with their bid, issued at the instance of a judgment
   creditor against purchasers of the judgment debtor's land at exe-
   cution sale, the Circuit Court's direction that the purchasers pay
   the costs of the proceeding was surplusage; they following the
   execution sale and the event of the rule to show cause, which was
   favorable to the judgment creditor.

Before RICE, J., Oconee, Spring term, 1917. Affirmed.

Baxter Roach, as judgment creditor, procured rule to show cause issued to J. G. Breazeale and another, why bid at execution sale should not be complied with, and from the decree the respondents appeal.

The following is the decree of the Circuit Judge and the exceptions directed to be reported:

Decree: On the 31st day of January, 1916, Baxter Roach commenced an action in the Court of Common Pleas for Oconee county against Mrs. F. K. Watson, demanding judgment in the premises. The issue came on for trial before his Honor, Mendel L. Smith, and a jury, and judgment was obtained against Mrs. F. K. Watson on the 29th day of March, 1916, for the sum of $200, and costs. This judgment was entered and enrolled and execution issued thereon directed to the sheriff, requiring him to levy upon the tract of land belonging to Mrs. F. K. Watson for the satisfaction of said judgment. He levied as directed, and after due advertisement sold the tract of land in question here, on sale day in September, 1916, to J. G. Breazeale and F. H. Shirley for the sum of $1,300. They declined to comply with their bid, alleging that the title offered to them by the sheriff was not good and sufficient, for the reason that the defendant in execution was the head of a family and entitled to the homestead exemption out of said tract of land, under the law of this State. Whereupon, the judgment creditor and relator in this proceeding had executed a rule to show cause why the said J. G. Breazeale and F. H.

Shirley should not be required to comply with the terms of their bid, alleging that the respondent, Mrs. F. K. Watson, is the wife of J. R. Watson, who had a sufficient amount of real estate of his own to make said homestead, and, further, that his wife was not entitled to said exemption out of her individual property in addition to the husband. Mrs. F. K. Watson is a party to this proceeding, and a copy of the application and rule to show cause were served upon her in the State of Kansas, where she is now residing, on the 10th day of February, 1917, but she has made no return to the rule.

J. G. Breazeale and F. H. Shirley have made a return, setting up Mrs. Watson's right to the homestead exemption, and that the Westminster Bank holds a mortgage against her tract of land amounting to $500 or $600. The said bank also makes return, and sets up its mortgage, and also an attachment which it had sued out against the land, on a note given to the bank by Mrs. Watson, which attachment was subsequent to the entry of judgment in favor of relator herein.

Upon the issues made up between the relator and respondents herein, the cause came on to be heard before me at the March term of Court, 1917. After hearing the testimony of several witnesses in open Court and upon the records introduced in evidence, I find as follows:

That some years ago Mr. and Mrs. Watson purchased a tract of land in Oconee county, containing something like 200 acres, which was paid for out of their joint funds; but the legal title thereto was taken in the name of Mrs. F. K. Watson. For reasons unknown to the Court Mr. and Mrs. Watson became estranged, and after unfortunate domestic scenes she seems to have forcibly driven him from the home they both bought. The witnesses testify that the cause of the separation was Mrs. Watson's fault, and from the testimony I conclude that this is correct. Mr. Watson seems to have made repeated attempts, through friends, to effect a

reconciliation, but they all failed.   He then brought an action in the Court of Common Pleas, asking that the tract of land belonging to him and Mrs. F. K. Watson as tenants in common be partitioned.   The Court ordered the land partitioned equally between J. R. Watson and his wife, Mrs. F. K. Watson, and on the 13th day of January, 1917, said partition was made in kind by commissioners acting under order of the Court.

Mr. and Mrs. Watson had a large family of children, some of whom were minors and were still residing with them at the time of their separation.   After the separation, it seems that four or five of them, the youngest of whom was an infant about 12 years of age, continued to reside with their mother on the place, and they and their mother were supported from the income of the whole place, until the partition above mentioned in January, 1916.   Mrs. Watson was given choice of the tracts of land, and she chose the tract upon which the large residence was situated.   She and two or three of the minor children continued to reside there until the house was burned some few months after the division.   J. R. Watson, the husband, rented his tract of land last year after the division, and continued to do as he had been doing during the 4 years they have been separated, to wit, went about from place to place, working at one thing and another.   While it does not appear that J. R. Watson contributed anything directly towards the support of his wife and children since the separation, still it does appear that the wife and children received the entire proceeds from the income of the whole place, half of which was his, and also used the mules and other personal property belonging to him as long as they resided on Mrs. Watson's place.   In fact, one of the mules was delivered to him by her the latter part of December, 1916.   It does not appear that he ever, at any time, refused to support them; on the contrary, the testimony is that he was and is ready and willing to perform

his duty as a husband and father, but that he is prevented from doing so by the wilful conduct of his wife.

I find that the land was partitioned January 13, 1916. Baxter Roach obtained judgment against Mrs. F. K. Watson on March 29, 1916. Soon after this her residence was burned, and Mrs. Watson took the children and left the State for a while. The execution against her was lodged with the sheriff, and sale of the land herein made under execution on sale day in September, 1916. Mrs. Watson was present at the sale, and I find that at that time she was a resident of the State of South Carolina. I also find that J. R. Watson was, and still is, a resident of this State. I find, further, that J. R. Watson, the husband of Mrs. F. K. Watson, is the head of the family, and that he owns real estate adjoining the property of Mrs. F. K. Watson worth the homestead exemption over and above all existing liens.

Under this state of facts, I find that Mrs. F. K. Watson is not the head of the family, and is not entitled to the homestead exemption out of her separate estate.

I also hold that the doctrine of *caveat emptor* applies, and that the respondents, J. G. Breazeale and F. H. Shirley, bought said tract of land subject to all liens of record existing against it at the time of their bid.

It is, therefore, ordered, adjudged and decreed, that the said J. G. Breazeale and F. H. Shirley do forthwith comply with the terms of the sale and their bid, and pay to the sheriff of Oconee county the sum of $1,300; that upon said payment being made, the sheriff do execute and deliver to the said J. G. Breazeale and F. H. Shirley a good and sufficient title to said land, subject, however, to any liens of record that may have been existing against said land at the time of their purchase.

It is further ordered, adjudged and decreed, that out of the $1,300 the sheriff of Oconee county do first pay the costs of the action of Baxter Roach, plaintiff, against Mrs. F. K. Watson, defendant; that he do then pay to Baxter Roach,

or his attorneys, the amount of his judgment, with interest; that he do then pay to the respondent, Mrs. F. K. Watson, or her attorneys, whatever balance that may be remaining in his hands out of the $1,300; that the respondents, J. G. Breazeale and F. H. Shirley, do pay the costs of this proceeding.

Exceptions: (1) For that it was error for the Circuit Judge to hold, "I find that Mrs. F. K. Watson is not the head of a family, and is not entitled to the homestead exemption out of her separate estate," but his Honor should have held that the said Mrs. F. K. Watson is the head of the family within the meaning of the Constitution and laws of this State, and is entitled to the homestead exemption out of her separate estate.

(2) For that it was error on the part of the Circuit Judge to hold, "I also hold that the doctrine of *'caveat emptor'* applies, and that the respondents, J. G. Breazeale and F. H. Shirley, bought the said tract of land subject to all liens of record existing against it at the time of their bid;" but his Honor should have held that respondents, as purchasers at the public sale, had a reasonable time in which to examine the titles to said lands, and if upon such examination, the titles were found to be defective, respondents had the right to refuse to comply with their bid.

(3) For that the Circuit Judge erred in adjudging "that the said J. G. Breazeale and F. H. Shirley do forthwith comply with the terms of the sale and their bid, and pay the sheriff of Oconee county the sum of $1,300," in that the said Mrs. F. K. Watson is the head of a family and entitled to the homestead exemption out of her separate estate in these lands, and that, inasmuch as no homestead in lands were set off and laid out to the said Mrs. F. K. Watson before the attempted levy and sale of the premises, said sale was utterly null and void, and respondents had the right to refuse to comply with their bid upon ascertaining such to be the fact.

(4) For that the Circuit Judge erred in adjudging "that out of the $1,300, the sheriff of Oconee county do first pay the costs of the action of Baxter Roach, plaintiff, against Mrs. F. K. Watson, defendant; that he do then pay to Baxter Roach or the attorneys, the amount of his judgment, with interest; that he do then pay to the respondent, Mrs. F. K. Watson, or her attorneys, whatever balance there may be remaining in his hands out of the $1,300; that the respondents, J. G. Breazeale and F. H. Shirley, do pay the costs of this proceeding," in that the Circuit Judge should have directed that after the payment to Baxter Roach of the amount of his judgment, with interest, that from the balance remaining of the amount of the $1,300 of the bid of these appellants, the sheriff should apply the same to the discharge of the lien of the mortgage indebtedness, and of the attachment of the respondent, Bank of Westminster.

(5) For that the Circuit Judge erred in holding that the respondents, J. G. Breazeale and F. H. Shirley, should pay the costs of this proceeding, but the Circuit Judge should have directed that the said costs be paid out of the amount paid to the sheriff as the bid of respondents.

*Mr. E. L. Herndon,* for appellants, cites: *As to right of judgment debtor to homestead exemption in land sold at execution sale:* Const., art. III, sec. 38; Civil Code 3711; 23 S. C. 316; 32 S. C. 168; 13 S. C. 186; 32 S. C. 165; 33 S. C. 597; 36 S. C. 576; 51 S. C. 489; 54 S. C. 375. *As to disposition of proceeds of sale after satisfaction of judgment:* 2 Bay. 171; 2 McC. *383; Dudley 46; 2 Bail. 118. *As to costs:* 10 S. C. 40; 27 S. C. 19; 40 S. C. 446; 56 S. C. 411; 56 S. C. 506; 4 S. C. 402; Code Civ. Proc., secs. 2 and 3; 4 S. C. 23, 36.

*Messrs. Shelor & Hughes,* for respondent, cite: *As to homestead:* Const., art. III, sec. 28; Const. 1895, vol. I, Code of Laws, sec. 3717; 32 S. C. 165. *As to doctrine of caveat emptor:* 2 Bay. 169; 2 Mull. 143; 14 Rich. 103; 15

2—109.

S. C. 135; 26 S. C. 41; 50 S. C. 218. *As to costs:* Section 361, Code of Procedure.

January 24, 1918.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Appeal from an order of the Circuit Court made upon a special proceeding, and arising out of these circumstances. Roach recovered a judgment at law against Mrs. Watson, a married woman, and alleged to be the head of a family. Execution was issued on the judgment, and the land of Mrs. Watson was sold to satisfy the judgment. Breazeale and Shirley bid, and the land was knocked down to them. They declined to pay the bid and take title, because (1) they said the sheriff was without power to sell the homestead, and they got no title; and (2) because they said there were incumbrances on the title. The Circuit Court made an order and held (1) that Mrs. Watson was not the head of a family and was not entitled to homestead; (2) that the bidders bought with reference to incumbrances at their peril, and whether they got unincumbered title is irrelevant; (3) that the bidders should pay their bid, and out of the purchase money the costs should be first paid, and the Roach Judgment debt and the balance should be paid to Mrs. Watson. These conclusions the appellants question, and they make one other issue which the Court did not expressly decide, and that is, the liability of the purchase money when paid in to satisfy a mortgage held by the Westminster Bank in the land, and a certain attachment lien on it. Let the Circuit order and the exceptions be reported.

We think the controversy does not necessarily involve any issue of homestead; for if the bidders bought the title at their peril (*caveat emptor,* as it is called), then there is no need to inquire if the title was immune from sale because it was a homestead.

The law is well settled, and has been for a century, that ordinarily after a person at an execution sale has bid off the property sold, it is too late for him to question the title; he must comply with his bid. *Davis v. Murray,* 2 Mill. Const. 143, 12 Am. Dec. 661; *Wingo v. Brown,* 14 Rich. 106; *Long v. McKissick,* 50 S. C. 218, 27 S. E. 636; *Norman v. Norman,* 26 S. C. 41, 11 S. E. 1096. The rule is modified where the sale is had pursuant to an order of a Court of equity. *Bank v. Bramlett,* 58 S. C. 477, 36 S. E. 912, 79 Am. St. Rep. 855. If this seems to be an artificial difference, it is now too well fixed in the jurisprudence of the State to be changed by us. The judgment of the Circuit Court, therefore, that Breazeale and Shirley must take such title as passed and pay the price is right. We pronounce no opinion upon whether Mrs. Watson's title passed to the purchasers.

This leaves one other issue to be decided, if indeed there be another real issue in the case.

For what we have said about insufficient title applies to the alleged incumbrances on the title. The record does not disclose with any sort of particularity the character of the liens referred to. It only appears from the record, in the "statement" of the "case" (1) that there was at the date of the execution sale a mortgage for $437.20 on the land by Mrs. Watson to the Westminster Bank; and (2) that there was also then existent "a lien upon the said tract of land of an attachment levied by the sheriff of Oconee county in a suit of the *Westminster Bank v. Mrs. Watson.*" When the purchaser bought the title incumbered by a mortgage, he took it under like circumstances and legal effect as if he had bought a horse which was unsound; the title was infected by the cancer of debt, and the buyer took it in that plight. *Davis v. Murray; Norman v. Norman,* before cited. To permit the purchaser to apply the purchase price to remove the mortgage incumbrance would be to undo the consequences of the rule of *caveat emptor.*

The reference in the record to the attachment lien is so insufficient that no conclusion may be drawn from it.

The direction by the Circuit Court as to the payment of costs was surplusage; they followed the execution sale and the event of rule to show cause.