## EX PARTE COOLEY.

SALE.—That order of sale as advertised was changed by officer without objection, after stating that change would be made if no one objected; that several interested insolvent parties conspired to bid off several tracts, first sold at much more than their value, and then failed to comply, thus misleading a mortgagee as to the amount of sales, and preventing him from causing the last tract to bring more than one-half of its value, are not sufficient grounds to set aside the sale of the last tract to a party who was in no way connected with changing the order of sale, or the bidding on the first tracts, the bidding being fair and open, and the fact that the bidders on the first tracts, who also procured the change in order of sale, after sale of last tract, rented same from purchaser, does not affect it.

Before PURDY, J., Anderson, April, 1903.  Reversed.

Petition by J. Matt Cooley to set aside foreclosure sale in Brown, Osborne & Co. against A. T. Newell *et al.*  The following is the decree on Circuit, omitting formal order of resale:

"J. Matt Cooley files his petition in the above stated cause, for the purpose of setting aside a sale made to Brown, Osborne & Co. under order of Court in said cause, on November salesday, 1902.

"The tract of land is known as the 'home tract' of A. T. Newell, and is referred to also as tract No. 2, containing three hundred and twenty-three acres, more or less, lying and being in the county and State aforesaid, bounded by tracts No. 3 and No. 4, W. W. Thompson and others, more

fully described by plat made by W. H. Shearer, surveyor, bearing date October 9th, 1902.

"The petition, among other things, recites that by reason of the alleged misconduct of A. T. Newell, judgment debtor, of which Brown, Osborne & Co. had notice, and by reason of other facts and circumstances set out in the petition, the Court should refuse to confirm the sale.

"It seems from the testimony that A. T. Newell, one of the parties in interest, owed large sums of money—about fourteen thousand eight hundred dollars being due to J. Matt Cooley, the petitioner, and about four thousand eight hundred dollars being due to Brown, Osborne & Co. Mr. Cooley having, as to them, the superior lien. The lands of Mr. Newell had been cut up into five tracts for the purpose of effecting a sale, and under the advertisement, the home tract was to have been the second tract sold.

"It further seems that up to within a few days of the time of sale, Mr. Newell had been making active preparations looking to the raising of money to prevent the sale, but all his arrangements had failed. In the meantime, however, he had spoken to the judge of probate, who was to make the sale, and had requested him to sell the home tract last. Finally the probate judge informed him that, if there was no objection, he would so make the sale, and when the time of sale arrived, having made the announcement, and no objection having been then offered, the order of sale was changed, and the home tract was offered for sale last, and was bid in by Brown, Osborne & Co. for three thousand one hundred and twenty dollars, which, under the testimony, is less than half its value. Brown, Osborne & Co. complied with their bid, but the petitioner refused to take the money, and filed his petition.

"It further appears that at the sale, W. S. Newell, who was in the employment of Mr. A. T. Newell, bought two of the tracts of land, one at three thousand dollars and the other at three thousand six hundred and fifty dollars. Mr. A. T. Newell also, at said sale, bid off a tract of two hundred and

ninety-three acres at five thousand dollars. Neither one of
the Newells complied with any of the bids. The small tract
of forty-three and three-fourths acres was sold at said sale
to W. N. Martin for one thousand and seventy dollars. The
three tracts of land bid in by the Newells were afterwards
resold at prices stated in the report of the special referee,
and sold for three thousand six hundred dollars less, in the
aggregate, than the Newells' bids, although it seems that
five thousand dollars was about a fair price for the two hun-
dred and ninety-three acre tract. The matters arising under
the petition and the returns thereto, were referred to Walter
H. Hunt, Esq., as special referee, and he filed his report on
the 21st day of February, 1903, finding all the facts ad-
versely to the petitioner, and recommending that the petition
be dismissed and the sale confirmed, and from his findings
an appeal was taken to this Court and was duly heard by me.

"The exceptions allege error as to almost every item of
the report.

"The referee, in concluding his report, says: 'While in-
adequacy of price will cause the Court to closely scrutinize
the sale and seize upon any circumstances indicating unfair-
ness in the sale itself, or any improper conduct of the person
reaping a benefit therefrom, to set it aside, and while the
Court is jealous of the integrity of its sales and insists upon
the utmost fairness, it will not set aside a sale made under
its order to the highest bidder, solely upon the ground of
inadequacy of price.'

"This is so well established as a matter of law that it does
not need any authority to support it. Taking this as a cor-
rect exposition of the law, what must be the conclusion from
the testimony in the case?

"Able counsel are engaged in the cause and it has been
most earnestly argued before me, and the report was made
by a distinguished member of the bar, who took the testi-
mony and saw the witnesses. I have great respect for their
integrity and learning, but notwithstanding this, a very care-

10—69

ful perusal of the testimony leads me to differ from the referee and the learned counsel in their conclusions.

"Under the views entertained by me, I do not deem it necessary to do more than give a passing notice of the sixth exception, as the report of the referee must be reversed on the other exceptions raised.

"I. Mr. Martin had *authority* to bid up to certain figures on each tract of land, his *instructions* were, not to buy land if he could realize the debt without. He states emphatically that Mr. Cooley said that he did not wish to purchase the land. Authorizing Mr. Martin to bid to certain figures and instructing him to do so, are entirely different matters; he had no such instructions, but was instructed that these were to be his limits if necessary to collect the debt. The referee erred in construing the testimony to mean that Mr. Cooley had instructed Mr. Nance, the probate judge, not to permit the Newells to comply with their bid. A careful perusal of the testimony will show that Mr. Cooley did not desire Mr. Nance to grant so much time that he would not have an opportunity of re-advertising the land for the next salesday. This was the cause of the complaint, and Mr. Cooley was not complaining because they desired to comply and were not permitted to do so. The fact is, that he wanted his money and did not desire to be delayed longer in getting it, and the record shows that he had just grounds for adopting such a course. Besides, the order of Court required the land to be resold if the bids were not complied with within five days, and Mr. Cooley had no right to change the order of Court by preventing the parties from complying before the expiration of the five days, or by allowing them to do so without the further order of the Court, after that time, and the testimony shows that he attempted to do neither the one thing nor the other.

"II. The testimony, I think, shows that tracts 1 and 4, referred to in the exceptions, were bid off at the first sale at sums far beyond their real value at either public or private sale. Just how one of the tracts reached the figure of three

thousand six hundred and fifty dollars through any other agency than that of W. S. Newell has not been explained. There was but one bid that carried the other tract to three thousand dollars, and that was the bid of W. S. Newell. No one has ever been found who was then, or is now, willing to pay any such price for this land, and it was subsequently fairly sold at public auction at figures approximating its real value.

"III. Exception three is well taken also, and is sustained by the testimony of Mr. A. T. Newell himself. He looked on the memorandum held by Mr. Martin, the agent of Mr. Cooley, and mistaking the instructions in reference to this tract for the instructions given in reference to the 'home tract,' and thinking Mr. Cooley had instructed Mr. Martin to bid five thousand eight hundred dollars on this tract, without any idea of becoming the owner of the land, made a bid of five thousand dollars. Mr. Martin's instructions gave him a limit of something like five thousand three hundred dollars on this tract, and as a smaller tract had already been sold for between three and four hundred dollars more than the limit given by Mr. Cooley, he could very well afford, in the exercise of his judgment, to drop off, when the two hundred and ninety-three acre tract reached five thousand dollars, and he did so, much to the surprise and consternation of Mr. Newell, who had not gone to the sale expecting to bid on this tract of land.

"IV. Exception four is well taken. Mr. Martin had authority to make these lands bring a fair price, and was prevented from bidding by the conduct of W. S. Newell and A. T. Newell. W. S. Newell was but the agent of A. T. Newell in these transactions, as the testimony abundantly shows. A. T. Newell says his brother told him he wanted a home; that he desired to bid on these two small tracts; that he had some money, and yet, we find W. S. Newell never made any attempt whatsoever to comply with these bids, but, on the contrary, we find from the testimony of Mr. A. T. Newell, that he said he had offered to sell these lands to other

parties, and named prices less than the sums bid by Mr. W. S. Newell. Taking these facts and circumstances, the relationship of the parties and the fact that Mr. Newell had procured the 'home tract' to be sold last, how can we escape the conclusion that while Mr. W. S. Newell made the bids, such bids were made at the instance of Mr. A. T. Newell? Suppose the witnesses say that such was not the case; can it be said that there is no evidence to that effect, when these facts stand out as proof which cannot be contradicted? They speak for themselves. Was it not the intention of Mr. A. T. Newell to have the bids entered for as large sums as possible for the tracts being sold prior to the 'home tract,' in order to chill and shut off bidding on the part of Mr. Cooley as to that tract? Did he not accomplish his purpose? Does not Mr. Martin expressly state what his instructions were, and that he was prevented from carrying out these instructions by the conduct of the Newells? It cannot be stated that he was negligent in the discharge of his duty, for he had a right to assume that no one would go to a public sale and trifle with the order of the Court by making pretensive bids, as was done in this case, and having made sure that his client was protected *in amount* and believing that he was protected *in fact*—and he would have been protected had the bids not been pretensive, of which he had no notice—he withdrew from the sale, and was prevented from going on by reason of such pretensive bids.

"V. This exception can be sustained for the reason set forth in the fourth exception. Exceptions 6, 9, 10, 11, 12, 13, 14 and 15 are sustained, although I do not deem it necessary, in sustaining the tenth exception, to sustain specifications (h) and (i). Mr. A. T. Newell and Mr. Brown state that there was no understanding that Mr. Newell should have the home place if it was bid off by Mr. Brown, for Brown, Osborne & Co. While there may have been no direct understanding amounting to an agreement which could be enforced, the facts and circumstances inevitably point to the conclusion that Mr. Newell knew, from what

had passed between himself and Brown, Osborne & Co., that if they purchased the place, such purchase would inure to his benefit, to some extent, at least, and we find that he never removed from the premises, but, on the day after the sale, entered into some agreement with Brown, Osborne & Co. by which he retained the possession of the place, it is said, as a tenant for the present year, with the option to purchase in the fall, but the particulars of the agreement are not set forth in the testimony. Besides, we find Mr. Newell, in the beginning of the bidding, running up the tract of two hundred and ninety-three acres to five thousand dollars, and we find that his brother, W. S. Newell, made bids of three thousand dollars and three thousand six hundred and fifty dollars for lands which sold for just half of these amounts at a subsequent sale, fairly made, and yet, when the much sought after and much coveted 'home place' was bid off at less than half its value, A. T. Newell pretends, and would have us believe, that he did not know who was the purchaser—something so improbable, under all the circumstances, that I am unwilling to adopt this view.

"Something has been said in the testimony about rumors circulated to the detriment of the title. The testimony shows that there were some rumors afloat concerning some proceedings that might be taken, but the testimony does not connect A. T. Newell with such rumors, but, on the contrary, all who enquired of him were advised by him that the title was good.

"Setting aside this sale will probably work great hardship upon A. T. Newell, and will, no doubt, operate most disastrously to his interest, and will inure to the benefit of the petitioner. It will not, however, cause loss to Brown, Osborne & Co., who are entitled to have their money returned with interest. But the question as to who will suffer loss and who will be benefited in a case of this kind, and under the facts as they here exist, cannot control the Court in reaching its conclusion. The integrity of a judicial sale, made by the order of this Court, has been assailed, and the circumstances

point to the fact that the Court has been imposed upon, and it is within its power to grant relief and to do justice between the parties by refusing to confirm the sale, and this must be done."

From this decree, Brown, Osborne & Co. and A. T. Newell appeal.

*Messrs. Tribble & Price,* for Brown, Osborne & Co., cite: *Debtor remaining in possession raises no presumption of secret agreement:* 2 Strob. Eq., 286. *As to inadequacy of consideration:* Rice Eq., 3; 2 Rich. Eq., 371, 296, 311; 35 S. C., 416. *On what ground sales will be set aside:* 38 S. C., 360; 36 S. C., 36; 46 S. C., 280.

*Messrs. Bonham & Watkins,* for Newell, cite: *Inadequacy of price not ground for disturbing sale:* 2 Strob., 285; Rice, 3; Harp., 50; 14 S. C., 148; 46 S. C., 274. *Change of order of sale will not vitiate it:* 35 S. C., 409; 38 S. C., 357.

*Messrs. H. J. Haynesworth* and *B. M. Shuman,* contra, cite: *As to what will vitiate sale:* 17 Ency., 999; 20 A. St. R., 507; 38 S. C., 360; Rich. Eq. Cas., 133; 61 S. C., 40; 13 S. C., 128; 12 Ency., 1 ed., 233; 50 S. C., 12; 2 Rich. Eq., 296, 355; 32 N. J. Eq., 41, 189; 2 N. J. Eq., 214; 32 Ark., 392; 5 Hous. Del. R., 435; 34 Fla., 302; 24 Ind., 264; 38 Md., 92; 43 Miss., 314; 17 Ency., 997-1003; 2 Jones on Mtgs., 5 ed., secs. 850, 858, 859; Rorer on Jud. Sales, secs. 1668, 1667, 1670a, 1672; 117 U. S., 108; 161 U. S., 334; 2 McC. Ch., 455; 16 N. J., 48.

*Mr. B. F. Martin,* also contra, cites: *As to important general principles regarding public sales:* 17 Ency., 2 ed., 994, 995, 953; 25 S. C., 280; Rorer on Jud. Sales, 2 ed., secs. 545, 850; 25 S. C., 280; 23 S. C., 514; 50 S. C., 12; 16 S. C., 281; 13 S. C., 143; 2 Der., 128; 61 S. C., 40. *As to inadequacy of price, irregularities of conduct and appear-*

*ances of fraud:* 3 Green's Ch., 266; Rorer on Jud. Sales, secs. 1095, 549; 32 N. J. Eq., 22; 12 Ency. P. & P., 93; 17 Ency., 2 ed., 1003; 28 Fed. R., 867; 39 N. Y. Sup. Ct., 523; 37 N. Y., 155; 84 Ken., 685; 42 Kan., 382; 60 S. W. R., 370; 161 U. S., 333; 53 N. J. Eq., 385. *Legal fraud sufficient:* 13 S. C., 148; 31 S. C., 64. *Surprise sufficient:* 17 Ency., 2 ed., 997-8; Story Eq. Jur., 120, N. 2; 16 Ves., 82. *Not necessary to implicate purchaser:* Rorer on Jud. Sales, 2 ed., 1133; 12 Ency., 1 ed., 233; 31 S. C., 64; 2 Rich. Eq., 177; Rich. Eq. Ca., 122; 8 Ves., 283; 78 N. Y., 387; 34 Fla., 302; 38 Am. Dec., 561; Freem. on Ex., 2 ed., 304g, 304h; 92 Fed. R., 252. *Rumors as to bad title:* 17 Ency., 2 ed., 1003; 28 S. C., 484; Rorer on Jud. Sales, 2 ed., 549, 1133; 3 Rich. Eq., 427; 37 N. Y., 155.

May 10, 1904. The opinion of the Court was delivered by

MR. JUSTICE JONES. In the case of Brown, Osborne & Co. against A. T. Newell and others, judgment was rendered foreclosing the junior mortgage of the plaintiff, Brown, Osborne & Co., and the senior mortgage of the defendant, J. Matt Cooley, against certain real estate of A. T. Newell, in Anderson County, S. C., and on salesday in November, 1902, the mortgaged lands were sold in several parcels, and Brown, Osborne & Co. became purchasers of one of these parcels, the "home tract" No. 2—323 acres.

This proceeding was instituted by J. Matt Cooley to set aside the sale to Brown, Osborne & Co. The petition, as ground therefor, alleged as succinctly stated by appellant's counsel:

"(a) That for the purpose of preventing free competition at the sale, A. T. Newell, with the knowledge and consent of Brown, Osborne & Co., circulated false reports injuriously affecting the titles to the land, by which persons were prevented from bidding for said lands.

"(b) That in order to carry out said alleged fraudulent scheme, A. T. Newell procured the officer making the sale to

change the order of sale from that in which it had been advertised.

"(c) That in furtherance of their scheme, A. T. and W. S. Newell 'kited' the bidding on certain tracts, with a view to deceive petitioner's counsel and agent at the sale and to induce him to think that his client's debt was covered and that he need not make the 'home tract,' which was sold, bring its full value.

"(d) That Brown, Osborne & Co. had agreed with Newell prior to the sale that he should continue in possession of the land if they purchased."

Return was made to the rule to show cause granted upon said petition, denying the charges made, and by consent all issues of law and fact were referred to Walter H. Hunt, Esq., as special referee, who, after taking the testimony and hearing counsel, made report confirming the sale and dismissing the petition. The following is the finding of facts by the special referee:

"1. That A. T. Newell and Brown, Osborne & Co. did not circulate a report that minor children had an interest in said lands, and there would be further trouble; but, on the other hand, A. T. Newell protested whenever occasion required that the titles to said lands were perfectly good.

"2. That said lands were not sold in the order in which they were advertised, and that the referee did not sell in that order at the request of A. T. Newell; but before changing the order of sale, the referee publicly announced that if any person objected to the change, he would sell in the order in which the lands were advertised, and no person objected, and petitioner's attorney was present, heard the announcement and did not object.

"3. That at the sale in November, 1902, W. S. Newell bid in tracts numbers 1 and 4 at very full prices, and that he was unable to comply, and that said tracts were duly offered for sale on salesday in December, 1902, and brought $3,275 less than the amount bid in by W. S. Newell.

"4. That at the sale in November, 1902, A. T. Newell

bid in tract number 3 for $5,000, which was a fair price; but he was unable to comply, and that said tract was duly offered for sale on salesday in December, 1902, and brought $325.60 less than the amount bid by A. T. Newell.

"5. That after due advertisement the said lands were publicly and fairly offered for sale on salesday in November, 1902, and no person was prevented from bidding on any of said lands.

"6. That Brown, Osborne & Co. bid in tract number 2 at $3,120, and have complied with their bid, and that said tract was reasonably worth twice the sum at which it was sold.

"7. That neither Brown, Osborne & Co. nor the Newells did anything to chill the bidding on any of the tracts, and, so far as the testimony discloses, nothing was done by any person to prevent a fair and honest sale.

"8. There was no collusion between Brown, Osborne and Co. and the Newells, or either of them, to do anything to enable Brown, Osborne & Co. to purchase tract number 2 at less than its value.

"9. That at the sale in November, 1902, B. F. Martin, Esq., who is a careful, prudent and capable attorney, representing the petitioner, bid $3,100 on tract number 2, and permitted it to be knocked down to Brown, Osborne & Co. at $3,120, when he knew said tract to be worth at least twice that sum; but in allowing this, he was carrying out the instructions given him by petitioner.

"10. That A. T. Newell is occupying the said home tract, but he is there as a tenant of Brown, Osborne & Co., under a contract to rent said place, which contract was entered into after the sale to Brown, Osborne & Co."

The Circuit Court, by decree herewith reported, reversed the report of the special referee, and directed a resale of the tract purchased by Brown, Osborne & Co. We will not undertake to discuss in detail the numerous exceptions to the decree of the Circuit Court, but will go directly to the point, which, under our view, must control this case and cause a reversal of the judgment. After a careful consideration of

the testimony, we agree with the special referee in his finding of fact with reference to the conduct of Brown, Osborne & Co. There is not the slightest evidence that they did anything to prevent fair and full competition in the sale, or that they in any way colluded with the Newells, or either of them, in any design they may have had to cause Cooley's agent to let the "home tract" go at less than its value. There was no evidence that any one was deterred from bidding who wished to do so; and, so far as Cooley is concerned, he was represented by a very intelligent agent, who bid on the tract in question as a competitor with Brown, Osborne & Co., and voluntarily refrained from further bidding, under the belief that Brown, Osborne & Co.'s bid, together with the prices at which the other tracts were bid off, would be sufficient to pay Cooley's mortgage debt. The failure of the Newells to comply with their bids upset the calculation; but, even if their purpose was to bring about this result, we see no reason for depriving the junior mortgagees of the benefits of their purchase, made in fair, open competition with the senior mortgagee and all others, and without any improper conduct on their part. The decree for sale contemplated that a bidder might fail to comply with his bid; and directed procedure in that event, and it seems to us that Cooley's agent assumed the risk, so far as Brown, Osborne & Co are concerned, in permitting them to become purchasers of the home tract at less than its value, when he had it in his power to amply protect himself by preventing any sacrifice of the property. The loss to Cooley resulted from the mistake of his own agent, to which Brown, Osborne & Co. in no wise contributed. It is not a sufficient ground for setting aside a judicial sale, that one of the parties interested intended to bid higher, but neglected to do so, or was prevented by a mistake at the time of the sale, if neither the officer making the sale nor the purchaser contributed to the mistake, and the sale was fair and regularly conducted. *Young* v. *Teage,* Bailey's Eq., 13.

Where unfair means have not been employed to prevent competition at a judicial sale, mere inadequacy of price is no

ground for setting it aside. *Coleman* v. *Bank,* 2 Strob. Eq., 285; *Ex parte Alexander,* 35 S. C., 416, 14 S. E., 854; 17 Ency. Law, 2 ed., 1001. If the inadequacy of price is so gross as to shock the conscience, a court of equity would doubtless seize upon other circumstances impeaching the fairness of the transaction as a cause for vacating it. *Robinson* v. *Association,* 14 S. C., 148; *Schroeder* v. *Young,* 161 U. S., 334; 17 Ency. Law, 2 ed., 1003. But the circumstances impeaching the fairness of the transaction should relate to the conduct of the officer making the sale, as in *Farr* v. *Simms,* Rich. Eq. Cases, 122, or to the conduct of the purchaser participating in the attempt to stifle competition or affected with notice thereof, as in *Carson* v. *Law,* 2 Rich. Eq., 296; *Hamilton* v. *Hamilton,* 2 Rich. Eq., 355; *Barrett* v. *Bath Paper Co.,* 13 S. C., 158; *Herndon* v. *Gibson,* 38 S. C., 360; 17 S. E., 145, with annotations in 20 L. R. A., 545; *Toole* v. *Johnson,* 61 S. C., 40, 39 S. E., 254.

A judicial sale may also be set aside in case of a mutual mistake, as in *Ex parte Howlett,* 50 S. C., 1, 27 S. E., 533, but the case made does not involve these principles. The only complaint made against the officer conducting the sale is that at the request of A. T. Newell, he offered the several tracts for sale in a different order from that in which they were described in the advertisement. The tracts were sold in the order of their size, the smallest first, thereby selling the "home tract" last. Neither the decree nor the advertisement positively prescribed any particular order in which the several tracts should be sold, and in the absence of any such requirement, the officer charged with the conduct of the sale had a discretion as to the particular order in which the several tracts should be sold and could properly consult the wishes of the parties interested. In this case, according to the finding of the special referee, which is clearly supported by the evidence, the officer inquired if there was any objection to a sale in the order proposed by him at Newell's request, and no one made objection, including the agent of Cooley, who was present. As already stated, there

was no testimony impeaching the fairness or propriety of the conduct of Brown, Osborne & Co. The fact that A. T. Newell occupied the "home tract" after the sale amounts to nothing, in view of the correct finding of fact by the special referee, that he occupied as tenant of Brown, Osborne & Co., under a contract made after the sale.

The judgment of the Circuit Court is reversed, and the petition dismissed.