7739

VIRGINIA-CAROLINA CHEMICAL CO. v. McLUCAS, MASTER.

SALE—BID—INTEREST.—A purchaser at a sale under order of court of chancery has a reasonable time to investigate the title and if he finds it defective he is not chargeable with interest on his bid. *Here* it is held under the facts of this case, the bidder at such sale, his assignee nor the master is liable for interest on his bid, the title being found defective and bid assigned at instance of complaining judgment creditor.

CHEMICAL CO. *v.* McLUCAS. 351

Before WATTS, J., Marion, November, 1909.    Affirmed.

Rule to show cause by Virginia-Carolina Chemical Co. against J. D. McLucas, Master, W. J. Montgomery and James H. Manning *in re* G. A. Norwood against Cash Ellerbe, Virginia-Carolina Chemical Co. *et al.* From order discharging note, petitioner appeals.

*Messrs. Mitchell & Smith* and *Henry Buck,* for appellant, cite: *Master must follow terms of sale:* 18 S. C. 500; Spear. Eq. 481; 9 Rich. Eq. 392.    *Time to. investigate title was too long:* 18 S. C. 495.    *Interest on bid:* 15 S. C. 612; 10 Rich. 60; 12 S. C. 600; 24 Cyc. 54; 17 Ency. 987.    *Assignment of bid does not discharge purchaser:* 24 Cyc. 31; 7 S. C. 486.

*Messrs. Montgomery & Lide* and *M. C. Woods,* contra.

*Mr. Woods,* for Mr. Manning, cites: *Officer making sale is agent of parties:* 86 S. C. 227.    *Mr. Buck cannot complain now having kept quiet at time of assignment:* 84 S. C. 343. *And is now estopped from raising question of interest:* 76 S. C. 573; 57 S. C. 507; 42 S. C. 351.

*Messrs. Montgomery & Lide,* for Mr. Montgomery, cite: *Question of interest on bids is governed by equities of each case:* 15 S. C. 612; 2 Bail. 520.    *Reasonable time is given for examination of titles:* 35 S. C. 314; 55 S. C. 477.

STATEMENT OF FACTS.

The record contains the following statement of facts:

"The action was brought to foreclose a mortgage executed by the defendant, Cash Ellerbe, to the plaintiff, which covered certain tracts of land owned by him, and which was a first lien thereon, and on which the defendant, Virginia-Carolina Chemical Company, held a second mortgage. Of the tracts of land described in the complaint, there was one

known as the 'Home Place' of the said Cash Ellerbe, which contained three thousand five hundred and ten acres, more or less.

"The defendant, Virginia-Carolina Chemical Company, answered the complaint setting up its lien.

"The matter was referred to J. D. McLucas, master, and resulted in a decree made by his Honor, Judge Charles D. Dantzler, dated November 16th, 1908, in which it was ordered that plaintiff, G. A. Norwood, have judgment against the defendant, Cash Ellerbe, for the sum of twenty-nine thousand, eighty-six and 58-100 dollars, which said sum was found to be a first lien on the premises described in the complaint; that the defendant, Virginia-Carolina Chemical Company, have judgment against its co-defendant, Cash Ellerbe, and certain other co-defendants, jointly and severally, for the sum of eleven thousand nine hundred forty-four and 72-100 dollars; and have judgment against the defendant, Cash Ellerbe, individually for the sum of one thousand dollars, which said sums were held a lien on the 'Home Place,' second to the lien of plaintiff above mentioned.

"It was further ordered, adjudged and decreed that the mortgaged premises described in the complaint, including the aforesaid 'Home Place,' 'be sold at public outcry, before the courthouse door in Marion, South Carolina, by the master in and for the said county, on the first Monday in December next, or some subsequent salesday, to the highest bidder for cash, the purchaser or purchasers to pay for the papers.'

"The premises were sold on the 7th day of December, 1908, the 'Home Place' being bid off by W. J. Montgomery, attorney, for the sum of twenty-two thousand five hundred and ten dollars, he being at that price the highest bidder therefor.

"The master then made a report of sale in the usual form, at the same time, making a supplemental report as follows:

" 'J. D. McLucas, master, respectfully reports (as supplemental to his report on sales) in the case above stated, that at the sales of the lands of the defendant, Cash Ellerbe, under the decree of the Court in said cause, the tract of land containing 3,510 acres was bid off by W. J. Montgomery, attorney, for ($22,510) twenty-two thousand five hundred and ten dollars, the said sale being made December 7th, 1908. That on January 30th, 1909, the said W. J. Montgomery assigned his said bid for said land to James H. Manning, which assignment is hereto attached as an exhibit to this report. That on the first day of February the said J. H. Manning paid to the master the said $22,510, and the master executed to him a deed conveying to him the said 3,510 acres of land.

" 'That soon thereafter, the attention of the master was called to the matter of interest, which it was alleged, should have been computed upon said bid of $22,510, from the day of sale until the bid was complied with, on February 1st, 1909. That thereupon the master made demand upon J. H. Manning, the purchaser, for two hundred and thirty-six and 34-100 dollars, the amount of interest found to be due on said bid. That said J. H. Manning refused to pay said interest or any part thereof.

" 'The master, in making the sale, regards himself as the agent of both parties, the defendant, Cash Ellerbe, and his judgment creditor, Virginia-Carolina Chemical Company, whose debt was not fully paid out of the proceeds of the sale, and the first purchaser, W. J. Montgomery, attorney, and his assignee, J. H. Manning.

" 'The master finds as matter of law, that a purchaser at master's sale is liable for interest on the amount of his bid, from the day of sale until payment be made and deed of conveyance executed; that either W. J. Montgomery, attorney, the original purchaser, or J. H. Manning, his assignee, is responsible for the payment of said interest.

23—87

" 'Wherefore, the master recommends that the Court issue a rule against said W. J. Montgomery, attorney, and J. H. Manning, requiring them to show why they should not be ordered to pay to the master, for the benefit of the defendant, Cash Ellerbe, and his unpaid judgment creditor, the sum of two hundred and sixty-six 34-100 dollars, balance due on the sale of said 3,510 acres of land.' "

His Honor, the Circuit Judge, passed an order that W. J. Montgomery and James H. Manning, show cause "why they should not be required to pay into the hands of the Court, the balance found to be due by the master, in said supplemental report;" also an order requiring J. D. McLucas, master, to show cause "why he failed to collect the balance found by him to be due, before delivery of the deed of conveyance, and why he should not be held responsible to the judgment creditors, for his failure to do so." Each of said parties made return to the rule to show cause.

The return to the rule to show cause, made by W. J. Montgomery was as follows:

"That he bid off the thirty-five hundred and ten (3,510) acres of land, set out in the return of the master, as therein stated. That subsequently to the bidding off of the property, upon investigating the title thereto, he ascertained that in the division of the estate of the late W. S. Ellerbe, it was provided in the partition proceedings, that the mansion house located on the thirty-five hundred and ten acres of land, bid off by this respondent, was to remain as a home for certain of the unmarried daughters, naming them, his widowed daughter and her daughter, as long as they saw fit to occupy it as a home. That the infirmity in the title above stated, existed at the time respondent bid off the property, and of which he was ignorant at the time of making his bid. That as soon as this respondent learned of this defect, he notified the attorneys representing the plaintiffs, in the proceeding under which the property was sold, and also declined for this reason, to comply with his bid, and

offered to said attorneys to assign his said bid. That the
matter remained in this shape, it being understood between
the said attorneys and this respondent that the question
raised, would be litigated and settled, in the most expeditious
method possible; and this respondent with the said attorneys,
had about perfected arrangement, for renting the property
for the present year, when this respondent was approached
by Mr. Henry Buck, representing one of the defendents, in
said proceeding, with the statement that he had found a
purchaser who would take respondent's bid. Subsequently,
respondent was informed, that the bid would be taken by
Mr. James H. Manning, co-respondent herein. That in
conformity with said understanding, and without any other
understanding whatever, this respondent assigned his bid.
That from the date of the assignment, January 30, 1909,
until the filing of the supplemental report made by the mas-
ter, this respondent never heard anything further, in
reference to the said transaction, and was dumbfounded
when informed by Mr. Buck, on the porch of the court-
house the first day of the criminal Court, that the master
had filed said report, in reference to interest upon the pur-
chase price of the property, hereinbefore referred to. That
he so informed Mr. Buck, and expressed his great surprise
that the master should have filed the report referred to,
inasmuch as about nine months had elapsed since the trans-
action had occurred; and while respondent could in no sense
regard himself, as liable on account of said bid, yet, had he
been notified at the time the question arose between the
master and Mr. Buck and Mr. Manning, he might have been
able to have protected himself from loss in the matter, but as
respondent now sees it, he would be wholly without remedy,
through no fault whatever of his own. That respond-
ent, in this connection, was informed by Mr. Manning
a few days after Mr. Buck kindly informed him, about the
filing of the master's report, of the demand made upon him
by the master, for the interest on the bid and his declining

to pay it, and offering to return the deed, which was the first time that respondent had ever had any intimation or information of this feature of the matter. That this respondent knew nothing of the arrangement, by which Mr. Manning was to take over the property, and had nothing whatever to do with that feature of the transaction until he came with Mr. Buck, and possibly with Mr. Mullins, to respondent's office to procure the bid. That respondent stated that he was ready to assign his bid, but inasmuch as his associates had not been consulted, he would call them over the phone and notify them, of what he proposed to do, which was done. That at the time of the assigning the bid, he told Mr. Buck, that he wanted the assignment carefully drawn, because he wanted no further trouble about the matter, as it had already given him great annoyance, which respondent now repeats. That in a conversation had with Mr. Buck, at some time prior to the assignment, something was said about the bid's drawing interest, in case respondent was forced to take title thereto; but at no time, either prior to the assignment, or at the time of the assignment or afterwards, did this respondent agree to pay interest on the bid, and when he made the assignment, it was his understanding, that he had nothing further whatever to do with the transaction; and, as stated above, this respondent remained in ignorance until the time stated above, that interest had been either claimed or paid, and had no knowledge or information further in regard to the transaction, one way or another, thus being left under the impression, until said report was brought to his attention, by all the parties connected therewith, that the entire matter had been closed up and settled at the date the assignment was made.

"Wherefore, respondent insists that by his conduct the master is now estopped, from asking this Court to require this respondent, to pay the amount claimed by him as interest on said bid; and insists, outside of the legal estoppel, which he herein sets up, and which he believes he is of

right entitled to plead, it would be equitable unjust and unreasonable on the part of the Court, to require him to pay the said amount of money or any part thereof; and he prays that as to him, the said rule be dismissed."

The view which this Court takes of the questions involved, renders it unnecessary to set out the other returns.

The ruling of his Honor, Judge Watts, on hearing said returns, was as follows:

"I think when Mr. Montgomery bid off the property and assigned it to Mr. Manning that let him out; I think when Mr. Manning took Mr. Montgomery's bid, and the master gave him a deed for the amount of the bid, that let him out; and I think the master, following his usual custom and practice in a matter of this sort, allowed, in my opinion, not an unreasonable time that titles might be investigated. The rule is discharged."

The Virginia-Carolina Chemical Company appealed from the order discharging the rule to show cause.

### OPINION.

December 9, 1910.    The opinion of the Court was delivered by

MR. JUSTICE GARY, *after stating the facts.*    The first question that will be considered is, whether W. J. Montgomery was liable for interest on his bid.

The principle is well settled in this State, that a purchaser of land, under a decree rendered by the Court, in the exercise of its chancery jurisdiction, is entitled to a reasonable time, after bidding off the property, to ascertain whether the title is defective.

The rule is thus stated in *Bank* v. *Bramlett,* 58 S. C. 477, 36 S. E. 912:

"In *Mitchell* v. *Pinckney,* 13 S. C. 212, it was stated: 'Reasonable time is always given for the examination of titles and, if necessary, a reference will be ordered.'    We take it that this expresses the policy of this State, and it is

a fair and just one to all concerned, and it is well calcu-
lated to inspire confidence, and promote competition at
equity sales.   Such being the rule, we do not well see how
purchasers at equity sales, should be denied relief for defect
of title, on the mere ground that they are bound, by con-
structive notice of such defect, unless it be that relief is
never to be afforded for defect of title, which a full exami-
nation of records would disclose, which would, for most
practical purposes, be a denial of relief for defective title.
If one has actual notice of the defect in the title, or has
before his bid discovered such defect by an examination of
the records, there would be good grounds for denying him
any relief; but if he has no actual notice, and bids in reliance
on the rule allowing him a reasonable time to examine into
his title, he ought not to be denied relief, merely because
he had constructive notice of the records, at the time of
his bid."

In other words the rule is based upon the just and equi-
table principle, that a purchaser should not be compelled to
comply with his bid, if the title is defective; and, if it is
a case in which it would be inequitable, to require him to
pay the principal of his bid, it necessarily follows, that the
interest thereon, could not be collected from him.

But he would be compelled to pay interest on his bid, if
investigation showed that the title was not defective.

In the case under consideration, it appears from the tes-
timony: (1) That shortly after W. J. Montgomery pur-
chased the property, he ascertained certain facts in regard
to the title, of which he did not have any actual knowledge,
at the time of his bid, which showed that the title was defec-
tive, and that he could not have been compelled, to comply
with the terms of sale; (2) That he promptly notified the
attorneys representing the plaintiffs in the forclosure suit,
of such fact, and for the foregoing reason, declined to com-
ply with his bid, and offered to assign it; (3) That W. J.
Montgomery and the attorneys for the Virginia-Carolina

Chemical Company, agreed to settle the question by litigation in the most expeditious method possible; (4) That with the knowledge and consent of the attorneys for the Virginia-Carolina Chemical Company, W. J. Montgomery assigned his bid, and the usual form, to James H. Manning; (5) That from the time he assigned his bid on the 30th of January, 1909, until the master made his supplemental report in October thereafter, W. J. Montgomery did not have notice of any further proceedings, in regard to the transaction, on the part of the attorneys for Virginia-Carolina Chemical Company, and (6) That if he had been notified, at the time the question of interest arose, between the attorneys for the Virginia-Carolina Chemical Company, James H. Manning and the master, he could in all probability have protected himself from loss, but that he would now be without remedy.

Under these circumstances he was not chargeable with interest.

Having reached this conclusion, it necessarily follows, that neither James H. Manning nor J. D. McLucas, master, are liable for interest.

Judgment affirmed.