## 7809

### FARROW v. FARROW.

1. APPEAL—PROBATE COURT—SALES.—Are findings by probate court in proceeding to set aside a sale binding on the Circuit Court on appeal?

2. SALES.—A contract of sale is made when the auctioneer's hammer falls and the bid thereby accepted has been entered in the book required by law to be kept by the officer making the sale.

3. IBID.—DISCRETION.—THE PROBATE JUDGE has abused his discretion in refusing to confirm a sale made by him on the grounds that the price is inadequate and a party in interest would have bid more but was temporarily absent from the sale on account of having gone to an office to rest after standing around the block for sometime waiting for the sale to come off.
   *Divided Court.*

4. REHEARING refused.

Before Wilson, J., Laurens, November, 1910. Affirmed.

Proceeding to set aside a sale in case of Lizzie Farrow individually and as administratrix against Broadus Farrow *et al.*, in probate court. The probate decree by O. G. Thompson, J., is:

"This is a motion in the above stated action for an order refusing to confirm a sale of the land described in the complaint containing 76 acres more or less lying near the town of Fountain Inn in Laurens county and for a resale of the same on the grounds set forth in the notice served on the bidder, Mr. J. C. Cox at the sale who bid the sum of $1,275.

"After regular proceedings had in this Court for the sale of the land of J. M. Farrow, deceased, for the payment of his debts in aid of the personalty, and after legal advertisement, the land was exposed by me as probate judge to public auction before the courthouse door on salesday in November, 1909. A hearing of this motion was had before me after due notice to the parties in interest upon affidavits and testimony taken in open court on the 15th inst.

"There were numerous sales on that day and considerable time was consumed in making the sales, the probate judge's sales coming last of all after a private sale had intervened. The Farrow land was the first on the list of the probate judge's sales. There were only two bids, one made by J. M. Richardson, who held a mortgage over the premises, he bidding enough to cover his mortgage and the sum he bid was $1,250, and one by Mr. J. C. Cox, who bid the sum of $1,275 and the land was knocked down to him at that price.

"The testimony shows that at the time the auctioneer announced the sale of the Farrow land, that Mrs. Lizzie Farrow, the plaintiff and administratrix of the estate and complainant herein, being fatigued after a long standing around the block of the public sales waiting for the probate judge's sales to commence, had gone temporarily to the

office of the probate judge to rest after her long waiting
for perhaps an hour and a half. Her brother Mr. DeBard
and son Broadus Farrow, who were at the courthouse steps
and seeing the commencement of the probate judge's sales,
hurried back to announce to Mrs. Farrow the commence-
ment of the probate judge's sales. She reached the steps
of the courthouse just as the crier on top of the southern
steps announced the result of the bidding and knocked the
land down to Mr. Cox at the price of $1,275, the crier
having, at the last bid, his back turned towards Mrs. Farrow
and her son, Broadus.

"Just as soon as circumstances would permit Mrs.
Farrow came up the steps of the courthouse and protested
against the sale of the land on the ground of gross inad-
equacy of price and surprise, and immediately thereafter
through her attorney commenced these proceedings against
a confirmation and for a resale. The testimony shows that
Mrs. Farrow and her son Broadus are wholly inexperienced
in business transactions of this kind, and it is apparent that
neither of them knew much about business of any kind.
Indeed, I might add that both are without educational train-
ing and Broadus is a mere youth about 23 years old. The
probate judge had supposed that she had instructed her
attorney, Mr. McGowan, to be at the sale and bid for her
or make the land bring its value, but it appears that she
had not done so nor given him a limit of value, but that
she had intended to bid herself, but through the misappre-
hension and mistake was caught away from the place of
sale at the critical moment.

"I think it proper that I should take judicial cognizance
of the fact of her intention to bid at the sale of this land as
she had so expressed herself to me immediately preceding
the sale.

"Numerous affidavits which are submitted as a part of
the record, made by citizens living in the community where
the land lies, and testimony of citizens of that community

taken at the hearing show that this land is well improved, having orchard, pasture, woodland, well watered, and good buildings, in fact that the buildings and other improvements would cost at least $1,200 to replace them, and that the place has some sixty acres in cultivation and lies within one mile of the town of Fountain Inn in the upper edge of the county of Laurens. The testimony shows that farm lands in that community and neighborhood sell all the way from $20 to $100 and even $150 per acre, and that this tract of land is worth from $20 to $40 per acre. Dr. T. B. Duckett, who owns adjoining lands, testified that he was ready to enter into bond to give two thousand dollars for this tract of land and that unimproved lands adjoining this tract and elsewhere in that section sell from $25 to $75 per acre.

"Many affidavits were filed made by persons some of whom reside in the community where the land lies, setting forth that $1,275 is a fair price for this piece of land, but the preponderance of the testimony goes to show that $1,275 is a grossly inadequate price for this land.

"I am satisfied that at the time of the sale Mrs. Farrow was the victim of miscalculations, surprise or misapprehension, that she is a person of very limited experience and that could she have reached the front where the sale was being conducted in time to catch the attention of the crier who had his back towards the direction where she was approaching the steps, she would have been a bidder for a higher price and that this land would have brought a price greatly in excess of $1,275. I am also thoroughly satisfied from the testimony that as to the value of lands in that community and as to the value of this land in particular, $1,275 is a grossly inadequate price for this land. There are some five minor children interested in this land who are represented by Broadus Farrow as guardian *ad litem* and they through their guardian *ad litem* join in this proceeding

and object to the confirmation of the sale to Mr. J. C. Cox at said bid.

"I therefore conclude that to confirm this sale, while securing to Mr. Cox a valuable property for a grossly inadequate price and for which he has been at no labor or sacrifice, would work a great hardship, loss and injustice to this complainant and her minor children, and also to unsecured creditors of the estate who had been called in to prove their claims and who as a matter of fact were not at the sale to protect their respective rights, Dr. T. B. Duckett, one of the largest unsecured creditors while knowing of the advertisement of the land for sale, was detained at home on account of the sickness of a patient and neighbor's child. Wherefore it is ordered, decreed, and adjudged that the said bid of J. C. Cox for the land should not be confirmed and that the land be resold by this Court on salesday in December next or on some subsequent salesday at public .outcry to the highest bidder if such bid should be over the sum of $1,275. The advertisement to this effect has already been published by me and the same is hereby approved from the beginning of its insertion."

From Circuit decree reversing judgment of probate court, plaintiffs appeal.

*Messrs. F. P. McGowan* and *Ferguson & Featherstone,* for appellant. *Messrs. Ferguson & Featherstone* cite: *Courts to prevent injustice will set aside sales:* 16 S. C. 276; 17 Ency. 995, 1002, 1004; 117 U. S. 180; Freeman on Ex., sec. 308; Clark's Ch. 101; 2 Paige Ch. 829. *Confirmation of sale is within discretion of probate court:* 33 S. C. 276; 13 S. C. 38.

*Mr. McGowan* cites: *Confirmation is within discretion of probate judge:* 39 S. C. 537; 9 Rich. Eq. 296; 33 S. C. 276; 24 Cyc. 34; Rover on J. S. 55, 58, secs. 545, 566, 568,

22—88

584; 12 Ency. P. & P. 96, 84, 85. *Gross inadequacy of price with slight circumstance of unfairness or irregularity will vitiate a sale:* Rover on J. S., secs. 454, 556; 24 Cyc. 28-32, 39; 35 N. J. Eq. 22; 55 Tex. 571; 24 Cyc. 40; 4 W. Va. 600; 69 S. C. 143; 2 McC. 159; 57 S. C. 28.

·*Messrs. Simpson, Cooper & Babb,* contra, cite: *Discretion not to. confirm a sale means a sound discretion:* 17 Ency. 992, 993; 24 Cyc. 34; 33 S. C. 276. *On the questions generally presented by this case:* 16 S. C. 281; 3 S. C. 323; 23 S. C. 514; 24 Cyc. 39; Spear's Eq. 352; 2 Rich. Eq. 296; 2 Strob. Eq. 287; 35 S. C. 416; 69 S. C. 154.

The opinion in this case was filed March 9, 1911, but the remittitur was held up on petition for rehearing until

April 5, 1911. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an appeal from an order of the Circuit Court, setting aside an order of the probate court, for a resale of certain lands.

The facts are fully stated, in the order made by the judge of probate, which will be set out, in the report of the case.

The first question that will be considered, is whether his Honor the presiding Judge erred, in overruling the judge of probate's findings of fact.

In a note to *Black* v. *White,* 13 S. C. 37, reference is made to the unreported case of *Gunning* v. *Erwin* in which the Court said: "The probate court was the proper tribunal, for determining such questions of fact, in the first instance; and, having the witnesses before it, had the best opportunity of judging of the weight, that should attach to the testimony of the witnesses, and of drawing proper inferences of fact. The Circuit Court ought not to disturb the findings of the probate court, on questions of fact of

that nature unless clear ground is afforded for that purpose."

We are satisfied with the findings of fact by the probate judge, especially as he conducted the sale, and had personal knowledge of many of the facts found by him. Therefore, all the appellant's exceptions, assigning error on the part of his Honor the Circuit Judge, in overruling the findings of fact by the probate judge, should be sustained.

The motion which the plaintiff made, before the judge of probate, for a resale of the lands, was addressed to his discretion, and was not appealable, unless there was an abuse of discretion on his part. *State* v. *Burnside,* 33 S. C. 276, 11 S. E. 787.

Indeed, we do not understand, that this proposition is controverted as it is sustained by the authorities cited, in the argument of the respondent's attorneys. Therefore, under our view of the testimony, the main question in the case, is, whether there was an abuse of discretion on the part of the probate judge, in ordering the resale.

Section 960 of the Code of Laws provides, that "every judge of probate shall keep the following books, * * * each to be designated by its label as follows * * *:

" 'Real Estate,' in which he shall enter all proceedings or orders, in relation to the sale or division of real estate; from the petition to the bond of the purchaser, both inclusive."

Section 837 of the Code of Laws provides, that "the sheriff of every county shall keep and preserve as public records in his office, the following separate books * * * labelled with its appropriate title, to wit:

"A 'Sale Book,' in which the sheriff shall enter all sales which he may make under any order, decree, execution or final process of any of the Courts of this State." * * *

In the case of *Long* v. *McKissick,* 50 S. C. 218, 27 S. E. 636, Mr. Chief Justice McIver, in behalf of the Court, uses this language:

"The next position taken by the appellant is, that the entry in the official sale book, was not the original entry, but that the memorandum book, in which the original entry was made, was the best evidence, and should, therefore, have been produced. The law requires the sheriff to enter in his official sale book, and such book affords the best evidence of such sales. The mere fact that a memorandum book, or sometimes a slip of paper, is used at the auctioneer's block, to enter the items of the sale, which are afterwards entered in the official sale book, does not make such memoranda the best evidence of such entries. It is well known, that sales by the sheriff are usually made out of doors, sometimes in bad weather, and to require the sheriff to take a ponderous book, constituting a part of the records of his office, out to the auctioneer's block, and there make the entries in it, the very moment after the sale, would be not only a harsh and unreasonable requirement, but would be far from conducive to the proper preservation of such book, and to the neat and orderly entries, proper to be made in such book. Besides, the authorities show that this position cannot be sustained. * * * In the absence of any evidence to the contrary, we must assume that the sheriff did his duty, and made the proper entries in his sale book, as early after the sale as practicable."

In discussing the proper entry to charge a purchaser, under the statute of frauds, the Court, by O'Neall, J., in *Elfe* v. *Gadsden,* 1 Strob. 225, states the rule as follows: "That the original memorandum book, was given in evidence, is not, it seems to me in any wise material; for, it is not the sales book; and it is allowable for the sheriff, to keep his private memoranda, and from them to make the entry required by law, in the official book." To the same effect is the case of *Christie* v. *Simpson,* 1 Rich. 407.

There is no testimony to the effect, that a memorandum of the sale was made by the probate judge who sold the property, at any time whatever; and the reasonable inference from the testimony is, that in any event, an entry had not been made in accordance with the requirements of the statute, when the plaintiffs hurried to the judge of probate, and protested against the inadequacy of the price for which the land was bid off, by the respondent. As there was then, no binding contract, between Cox and the owners of the land, it was the duty of the probate judge to expose the property for sale again, and to entertain bids, for a higher price.

It will thus be seen that it was not the negligence of the plaintiff, but the failure of the probate judge to recognize her rights, that deprived her of the opportunity, to bid for the land. And, the injustice which she suffered, demanded reparation, which was granted to her, when the judge of probate, in the exercise of the wise discretion reposed in him, ordered a resale.

In the case of *State* v. *Burnside,* 33 S. C. 276, 11 S. E. 787, the Court used the following language in reference to the court of probate: "The Court will relieve against the mistake of the party, bad faith on the part of the officer making the sale, *or the negligent mistake on the part of the officer, and in every case where it would be inequitable, that the sale should stand. American Ins. Co.* v. *Oakley,* 9 Paige 59. One of the things most desired and promoted in judicial sales, is free and full competition, so that property may sell for its full value; hence the policy of the law, in setting aside such sales, where there is fraud or mistake. or the biddings have been chilled, etc., etc." (Italics ours.)

The respondent's attorneys, however, rely upon the case of *Young* v. *Teague,* Bailey's Eq. 13 (cited with approval in *Ex parte Cooley,* 69 S. C. 143). In that case the principle was announced that it is not a sufficient ground for setting aside a judicial sale, that one of the parties inter-

ested intended to bid higher, but neglected to do so, or was prevented by a mistake, at the time of the sale, if neither. the officer making the sale, nor the purchaser, contributed to the mistake, and the sale was fair and regularly conducted; and it makes no difference that some of the parties were minors.

In that case, the application for a resale, was made after the execution and delivery of the deed, and reasons are therein assigned for the conclusion of the Court, that are inapplicable to the case under consideration. That case, however, recognizes the well settled doctrine, that the sale will be set aside, when the neglect or mistake of the officer offering the land for sale, has contributed to prevent competition in bidding. *Ex parte Cooley,* 69 S. C. 143, 48 S. E. 92.

In the case of *Yates* v. *Gridley,* 16 S. C. 496, the Court recognizes the fact, that the resale was refused in the case of *Young* v. *Teague,* Bail. Eq. 13, principally on the ground that the deed had been executed when the application was. made, and then says: "The English practice of opening the biddings before confirmation does not apply in this State. When titles have been executed in this State at official sales, they are good without confirmation, unless assailable for fraud or other facts and circumstances, entitling the party to equitable relief."

As the Court is equally divided in opinion, the judgment of the Circuit Court stands affirmed.

MR. JUSTICE WOODS *concurs in the conclusion of* MR. JUSTICE GARY.

MR. CHIEF JUSTICE JONES *thinks the judgment of the Circuit Court should be affirmed.*

MR. JUSTICE HYDRICK. While it is true that the confirmation of a sale under an order of Court is within the discretion of the Court making the order, still that discre-

tion is not an arbitrary or capricious one, but it is one which must be exercised in accordance with settled legal principles. If it appears that it has not been so exercised, the error may be corrected as for an abuse of discretion, which does not necessarily imply any improper motive or intentional wrong, but merely that the exercise of the discretion was, under the circumstances, manifestly contrary to reason and justice, or the settled principles of law, or the practice of the Court.

The policy of the law is to sustain judicial sales, when fairly made. Under our decisions, when the auctioneer's hammer falls at such a sale, and the bid thereby accepted has been entered in the book, which the officer making the sale is required by law to keep, a valid contract is made. The purchaser thereby makes himself a party to the cause, and may, except when there is fraud, misrepresentation, mistake, or other circumstances of unfairness in the sale, or a defect in the title, be compelled, by the order of the Court, to perform his contract. Justice to the bidder requires that, in the absence of any such circumstances, he should have the benefit of his contract. It should be mutual. Any other course would make the rights of the purchasers at such sales so uncertain that it would tend to discourage bidding at them, a result so much more injurious in its consequences that it overbalances the possible injury resulting in a few isolated cases by a firm adherence to settled principles.

The only facts worthy of consideration in this case are that Mrs. Farrow was absent when the land was sold to Mr. Cox, and the alleged inadequacy of the price. There is no intimation of any other reasonable ground for refusing to confirm the sale. The testimony shows that Mrs. Farrow, being tired of standing around the place where the sales were being conducted, went to the office of the probate judge,—some forty yards distant,—where she could be more comfortable, while waiting for the sale in

this case. Her attorney, her brother, her son, and her son-in-law were all present at the sales. It does not appear that she requested either of them to bid for her, or that she had even told either of them of her intention to bid or the amount she intended to bid, or that either of them was told to ask that the sale be delayed until she could be summoned, or that she or any one else notified the probate judge of her absence. She reached the place of sale just as the crier was knocking down the land to Mr. Cox, and, inferably from the testimony, before it was knocked down to him; yet she made no bid, nor did she inquire at what bid the land was being sold, nor does it appear that she did not know. Her brother and son were with her when she reached the place of sale. Either of them by bidding for her, or by inquiry as to the amount of the bid then being accepted (if she did not know it) could have arrested further proceedings. Would the Court characterize such conduct on the part of any other intending bidder as other than negligent? If so, it presents no ground for relief. The probate judge bases his conclusion, to some extent, at least, upon the ignorance and inexperience of Mrs. Farrow and her son. But he considers them sufficiently intelligent and experienced in business affairs to appoint the one administratrix of her husband's estate, and the other guardian *ad litem* for his infant children. But public policy forbids the recognition of such an excuse, unless some advantage was taken of it.

As to the inadequacy of price: The rule is well settled that mere inadequacy of price, unaccompanied by other circumstances which should invoke the exercise of the Court's discretion, is not sufficient, unless, perhaps, it is so great as to raise a presumption of fraud or to shock the conscience of the Court. Inadequacy of price coupled with other circumstances tending to cause it, or with any unfairness or impropriety in the sale, may be sufficient, even though neither, standing alone, would be. But the accom-

panying circumstances should be such as would of itself tend to call for the exercise of the Court's discretion. Certainly the mere negligence of an intending bidder would have no such effect. It cannot be said that the price is so grossly inadequate as to raise a presumption of fraud or shock the conscience of the Court. Only one person has made an actual offer to pay more than the bid accepted, and he is the principal unsecured creditor, whose offer of $2,000 would probably be paid, in part, at least, by his debt, upon which, presumably, he would otherwise get nothing.

If the mere fact that some one can be found, after a sale has been fairly made, who offers more,—even double what the land brought at the sale,—is held to be sufficient ground to refuse confirmation, the position of a purchaser at such sales is indeed precarious.

The foregoing views are supported by the following cases: *Young* v. *Teague,* Bail. Eq. 13; *Ex parte Alexander,* 35 S. C. 416, 14 S. E. 854; *Ex parte Cooley,* 69 S. C. 154, 48 S. E. 92.

I think the judgment of the Circuit Court should be affirmed.

MR. CHIEF JUSTICE JONES *concurs.*

The petition for rehearing in the case was refused in the order refusing a similar petition in *Hutchinson* v. *Turner, ante*—filed April 5, 1911.