### RALEIGH & C. R. CO. v. BALTIMORE NAT. BANK.

No. 548.

District Court, E. D. South Carolina.

Oct. 28, 1941.

W. R. C. Cocke, of Norfolk, Va., for plaintiff.

Francis Key Murray, of Baltimore, Md., for Protective Bondholders' Committee.

H. M. DuBose, Jr., of Winston-Salem, N. C., for J. S. Farlee & Co., Inc.

Louis M. Shimel, of Charleston, S. C., for Garson Iron & Steel Co.

McEachin & Townsend, of Florence, S. C., for Hyman-Michaels Co., of Chicago, Ill., and another.

D. Heyward Hamilton, Jr., of Baltimore, Md., and Paul A. Cooper, of Columbia, S. C., for defendant.

WYCHE, District Judge.

Pursuant to the order of this Court heretofore made, the Special Master, therein appointed, offered for sale the property of the plaintiff described in the order, to the highest bidder, on Saturday, October 4, 1941, after due advertisement and making public proclamation of the terms and conditions of the sale, as provided for in the decree and notice of sale. At such sale Hyman-Michaels Company of Chicago, Illinois, and Rochester Iron & Metal Company of Rochester, New York, were the last and highest bidders, and the property was sold to them for the sum of sixty six

thousand, nine hundred ($66,900) dollars, and they now apply to this Court for an order confirming the sale. J. S. Farlee & Company, Inc., a holder of plaintiff's 4% prior lien bonds, excepts to the confirmation of the sale to the successful bidders, and offers a bid in the amount of eight thousand, one hundred ($8,100) dollars, in excess of the highest bid received at the sale, and contends that the sale should be set aside for the reason that the highest bid is inadequate, and that investigation prior to the sale disclosed none of the property advertised for sale described as being situated in Robeson County, North Carolina, had appeared upon the tax books for several years listed in the name of the plaintiff, and that information was received from a Mr. Stanley that various parties in South Carolina had openly expressed claims adverse to any prospective purchasers for properties located in that state, and that this investigation and information caused Farlee and Company to reduce substantially the value that would otherwise have been placed upon the aggregate of the property to be sold, and that it was not until after the sale that it could be concluded that this apparent defect in title was due to failure to list the particular properties for taxes. Counsel for the Receivers and Trustee for the bondholders raised no objection to the confirmation of the sale. Counsel for the Bondholders' Protective Committee did not appear, but petitioned the Court before the hearing to confirm the sale. Garson Iron and Steel Company, one of the bidders at the sale, appeared by counsel and while raising no contest, its counsel stated in open court that if the sale were vacated his client would increase the total bid by ten thousand, one hundred ($10,100) dollars.

Concerning judicial sales it has been well-settled that: (1) When a sale of property is decreed by a court of equity as result of litigation, it is the purpose of the law that it shall be final; to assure reliance upon such sales and induce biddings, no sale should be set aside for trifling reasons or on account of matters which ought to have been attended to by the complaining party prior thereto; and it cannot be tolerated that either party should designedly wait until the property has been struck off to the other and then open the bidding and defer the sale by an increased offer. Pewabic Mining Company v. Mason, 145 U.S. 349, 12 S.Ct. 887, 36 L.Ed. 732. (2) A judicial sale is not final and complete until it has been duly confirmed and ratified by the Court under whose order it was made. Blossom v. Milwaukee & C. R. Co., 3 Wall. 196, 70 U.S. 196, 18 L.Ed. 43. (3) A judicial sale regularly made in the manner prescribed by law upon due notice, and without fraud, unfairness, surprise or mistake, will not generally be set aside or refused confirmation on account of mere inadequacy of price, however great, unless the inadequacy is so gross as to shock the conscience and raise a presumption of fraud, unfairness, or mistake. Whether the price bid is grossly inadequate and whether and upon what grounds confirmation should be refused are matters within the judgment and discretion of the tribunal ordering the sale, with the exercise of which an appellate tribunal will not interfere except in cases of abuse. Speers Sand & Clay Works v. American Trust Co., 4 Cir., 52 F.2d 831, 835. (4) If the inadequacy of price is so gross as to shock the conscience, a Court of Equity would doubtless seize upon other circumstances impeaching the fairness of the transaction as a cause for vacating it. Robinson v. Association, 14 S.C. 148; Schroeder v. Young, 161 U.S. 334, 16 S.Ct. 512, 40 L.Ed. 721. (5) But the circumstances impeaching the fairness of the transaction should relate to the conduct of the officer making the sale, or to the conduct of the purchaser participating, in the attempt to stifle competition, chill the bidding or to take any other undue or unfair advantage. Ex parte Cooley, 69 S.C. 143, 48 S.E. 92; Graffam v. Burgess, 117 U.S. 180, 6 S.Ct. 686, 29 L.Ed. 839. (6) Any interested party, including the purchaser, is entitled to apply to have the sale confirmed by the Court; any interested party may oppose confirmation of the sale. 35 Corpus Juris 45. (7) A party objecting to the confirmation of a judicial sale must show that he has been injured thereby by showing inadequacy of price or some fraud on the part of the purchaser. 35 Corpus Juris 46. (8) Although the doctrine of caveat emptor applies to judicial sales, a purchaser in good faith will be protected where objection is made to defects in title before confirmation, but the courts will ratify a judicial sale without undertaking to pronounce with certainty that the title is good, where it is free from any reasonable doubt which would prevent an ordinarily prudent man from accepting it. 35 Corpus Juris 49. (9) To the extent it

may be necessary to enforce compliance with the terms of an order for the sale of land, and to protect the rights of parties whose interests in such real estate have been adjudicated in a cause regularly before it, a Court of Equity unquestionably has jurisdiction of a successful bidder at a judicial sale as a party, or quasi party, to the proceedings in which the sale was ordered. The principle is also well settled in this State that a purchaser of land, under a decree rendered by the Court in the exercise of its chancery jurisdiction, is entitled to a reasonable time, after bidding off the property, to ascertain whether the title is defective. Ex parte Patterson (Blatt v. Blount), 121 S.C. 78, 113 S.E. 467.

The successful bidders rely upon the report of the Special Master and the record in the cause for confirmation, which show that there were eighteen bidders at the sale upon Parcel No. 1, each of whom deposited with the Special Master ten thousand ($10,000) dollars, before the sale as earnest money to comply if the successful bidder. Upon Parcel No. 2 ten bidders qualified, each depositing one hundred ($100) dollars, in accordance with the terms of the decree. Wide publicity was given the sale and the resulting response in number of bidders, with the wide territory from which they came, convinces me that sharp competition conducive to a fair price was effectively secured. There is no contention that the sale was not fairly conducted by the Special Master, or that the purchaser made any attempt to stifle competition, chill the bidding, or to take any other undue or unfair advantage. The number of bids received upon each parcel is sufficient to show clearly that nothing occurred to chill the bidding or stifle competition. An upset price of thirty-six thousand, four hundred, eighty ($36,480) dollars, was fixed in the decree on Parcel No. 1, and four hundred ($400) dollars, on Parcel No. 2. The total of the two bids accepted almost doubled the upset amounts. J. S. Farlee and Company, Inc., and Garson Iron & Steel Company were both bidders at the sale. It is obvious that J. S. Farlee and Company, Inc. and American Steel Export Company, for whom it is alleged Farlee and Company was bidding, had the same opportunity to investigate the title to the property sold as any other bidder. All the right, title and interest of the plaintiff in the property was sold, a reasonable time for investigation of title being a right of the successful bidder, a failure of the plaintiff to have title in any of the property sold would have been sufficient reason to refuse compliance.

In Smith v. Smith, 97 S.C. 242, 81 S.E. 499, 52 L.R.A.,N.S., 751, Ann.Cas.1916C, 763, the Supreme Court of South Carolina declared that a resale of real estate by a master appointed by the court to sell the same, after giving the first bidder only three hours in which to comply with his bid, was void, because it did not allow a reasonable time in which to examine the title. In Mitchell v. Pinckney, 13 S.C. 203, the Court, speaking to the same point, said: "Reasonable time is always given for the examination of titles, and, if necessary, a reference will be ordered." Virginia-Carolina Chemical Co. v. McLucas, 87 S. C. 350, 69 S.E. 670; People's Bank v. Bramlett, 58 S.C. 477, 36 S.E. 912, 79 Am.St.Rep. 855. It is also stated in Foster, Fed. Pr. vol. 2, 5th Ed. p. 1246, that "the highest bidder should usually be allowed a reasonable time within which to examine the title of the property before the sale is confirmed."

Speaking upon the same question, the Circuit Court of Appeals of this Circuit, had this to say in a Per Curiam opinion in Buell v. Kanawha Lumber Corp., 185 F. 109, "It is quite apparent that there were defects in some of the titles to the lands sold, and as the purchaser had been given reasonable time to investigate said titles, and as the practice under the procedure in the district of South Carolina recognizes the right of a purchaser to show defects in title, and, if shown, to be excused from complying with the purchase, we think the appellant should not have been decreed to comply with its bid."

Under the foregoing authorities, I cannot set aside the sale because the objectors had doubts concerning the validity of the title to some of the property sold. Furthermore, in my opinion the showing is not sufficient to sustain the conclusion that the objectors' bids were influenced by lack of time to investigate. The sale was made on Saturday, October 4, 1941, and counsel representing J. S. Farlee and Company, Inc. appeared in Greenville, South Carolina, on Monday morning, October 6, 1941, to oppose confirmation of the sale.

I cannot say that the offers of the contestants, being only about 15% increase, create such an inadequacy as to shock

the conscience of the Court; but, on the other hand, the very efficient manner in which the sale was conducted, the almost doubling of the upset price, the apparent satisfaction of the Receivers and Trustee, the approval requested by the authorized representative of the Bondholders' Protective Committee, and the large number of bidders and bids, lead to no other conclusion than that the sale was fair and without fraud, mistake, or surprise and should, in my opinion, be confirmed.